CHRISTINE MYERS, SOLE DEVISEE OF GEORGE MYERS, PLAINTIFF IN ERROR, v. CHARLES THEIS WEGER AND FRANK L. WEGER, DEFENDANTS IN ERROR.

Submitted July 12, 1898—Decided November 14, 1898.

1. In an action against a devisee, brought under "An act for the relief of creditors against heirs and devisees" (*Gen. Stat.*, *p.* 1679), a defendant confesses assets by devise if, by his plea, he neither admits nor denies them.

2. The defendant, who was sued as devisee of M. upon a contract made with M. by the plaintiffs, pleaded only the general issue, and, at the

close of the plaintiffs' case, moved for a nonsuit on the ground that the plaintiffs had failed to prove that the defendant had received land of M. by devise. *Held,* that there was no failure of proof, since the plea admitted that the defendant had received by devise from M. land sufficient to answer the plaintiffs' claim.

3. An executor who sues on a cause of action accruing after the death of his testator may do so either in his individual or in his representative character.

4. The plaintiffs, who were partners, and executors of T., brought suit, in their individual capacity, to recover money of the estate loaned by them. The defendant moved for a nonsuit upon the ground that the proof, which was of a debt due to the plaintiffs as executors of T., on a cause of action accruing after the death of the testator, did not support the declaration, which asserted an individual right of action. *Held,* that there is no incongruity between such a declaration and such proof.

5. A witness may use his own memorandum, made at or near the time of the events recorded, either to refresh or to supplement his memory.

6. A bookkeeper, who made the entries in a cash-book which he used on the stand as a memorandum, was allowed to read to the jury, from the book, the particulars of a promissory note. *Held,* that this was not error.

7. A promissory note, made by the defendant's testator to his own order, and unendorsed, was produced by the plaintiffs and offered and received in evidence. The suit was not brought on the note, but for money loaned nearly five years before the date of the note. *Held,* that to receive the note in evidence was not injurious error. Unendorsed it proved nothing. If it had been endorsed its effect would have been merely cumulative.

On error to the Atlantic Circuit Court.

For the plaintiff in error, *John J. Crandall* and *Charles A. Baake.*

For the defendants in error, *Allen B. Endicott.*

The opinion of the court was delivered by

ADAMS, J. The plaintiff in error, who was the defendant below, excepted to the admission of certain evidence and to the refusal of the trial judge to grant a nonsuit and has assigned error thereon. The assignments of error for refusal to nonsuit will first be examined. The allegation is that in

two respects the plaintiffs below failed to prove a cause of action against the defendant. In order to determine this twofold question it is necessary to examine the record and proofs.

The declaration alleges that Christine Myers, the sole devisee under the last will and testament of George Myers, deceased, was summoned to answer the plaintiffs; complains, in the form of the common counts, that said George Myers in his lifetime was indebted to the plaintiffs, and concludes with this averment, " yet the said George Myers in his lifetime and the said defendant, his sole devisee under his last will and testament as aforesaid, since the death of the said George Myers, have not nor have either of them as yet paid the several sums of money or any part thereof to the said plaintiffs, but the said George Myers in his lifetime and the said defendant have hitherto wholly refused, and the said defendant still refuses so to do, although she is the sole devisee under the last will and testament of George Myers, deceased, as aforesaid, and has sufficient estate of the said George Myers, deceased, as his sole devisee, to· pay the said sum of money herein alleged to be due the plaintiffs after the payment of his other debts," &c. It is well to notice that this allegation does not conform to precedent. The plaintiff, in his declaration, though he need not specify the lands descended, should aver distinctly that the defendant is devisee of lands of the deceased. 5 *Went. Pl.* 374. This is not plainly asserted in the language above quoted. It seems, however, to be naturally implied. The declaration, though informal in this particular, is not substantially defective. To this declaration the defendant pleaded the general issue, alleging that " neither she nor the said George Myers, now deceased, in his lifetime, did promise and undertake," &c. The plaintiffs offered in evidence, under objection, the record of the will of George Myers, from which it appeared that he devised all his real estate to his wife, Christine Myers. There was no proof as to the amount or particulars of the estate. The defendant offered no evidence on her behalf. The jury found a verdict

for the full amount claimed in the schedule attached to the declaration.    A general judgment was entered thereon against " Christine Myers, sole devisee of George Myers."

One of the grounds assigned in support of the motion to nonsuit is that the plaintiffs adduced no evidence to prove that the defendant ever received any of the estate of the testator, George Myers, as his devisee.    In other words, the proposition is that it was requisite for the plaintiffs, in order to charge the defendant to prove that she took land by devise, and to specify the land.    We think that the law is otherwise, and that upon this branch of the case the burden, both of pleading and of proof, rested not on the plaintiffs, but on the defendant, who by not denying assets admitted them.    There was, therefore, no such defect in the plaintiffs' proof as the objection assumes, and the trial judge did not err in refusing to nonsuit for the cause so assigned.    The conclusions thus briefly stated result from the following considerations : At common law an action lay against heirs on a specialty of the ancestor expressly binding his heirs.    An heir might, by proper pleading, restrict his liability to the lands that had descended to him and that he had not aliened before the commencement of the action.    In such an action, it was for the defendant, if he wished to limit his liability, to make disclosure, by his plea, as to lands descended.    He might either admit or deny assets.    If he denied assets, which he did by pleading *rien per descent,* and if he supported his plea by proof, the action failed.    If he admitted assets, which he did by specifying in his plea what lands he had inherited, and if the plaintiff proved his case, a special judgment went against the heir, to be made only out of lands descended, which had not been *bona fide* aliened before the commencement of the action.    If he pleaded falsely in respect to assets, as, for example, that he had inherited Black Acre when in fact he had inherited Black Acre and White Acre, the judgment was a general one, as if upon the debt of the heir.    This was the rule, not to punish the defendant for not telling the truth, but because, as the record did not truly specify the lands

descended, no accurate special judgment could be framed. So if the heir allowed judgment to pass against him by confession, or *non sum informatus* or *nil dicit*, or upon any other matter or ground, without making disclosure as to assets, the plaintiff had judgment and execution, as he should have for the debt of the heir himself, if he had made the obligation. In the words of the reporter, in *Davy* v. *Pepys, Plowd.* 438 *a*, 440 *a*, "if the heir is condemned upon any plea whatsoever, or by default, or without plea upon any cause whatsoever, it is the practice of the plaintiff to have execution of the body of the heir, or of his goods, or to have an *elegit* of his lands whatsoever, unless he confesses the debt and shows the certainty of the lands descended." Lord Chief Justice Holt, in *Smith* v. *Angel*, 7 *Mod.* 44, says of *Davy* v. *Pepys*, " there is not a word in it but what is good law," and thus restates the rule, " because there is no way for the heir to defend himself but by setting forth the truth, what assets he has, where they lie, and to open the truth of the case to the plaintiff."

In this condition of the law parliament passed the statute known as 3 *W. & M.*, c. 14, entitled "An act for the relief of creditors against fraudulent devises." The chief object of this enactment, and the only one that need now be considered, was to put devisees in the same category with heirs. The third section enacts, among other things, that the devisee " shall be liable and chargeable for a false plea by him or her pleaded in the same manner as any heir should have been for any false plea by him pleaded, or for not confessing the lands or tenements to him descended." The New Jersey statute, entitled "An act for the relief of creditors against heirs and devisees," passed March 7th, 1797 (*Pat. L., p.* 243 ; *Gen. Stat., p.* 1679), followed the general lines of the English act, but enlarged the right of action. The first section enacts, among other things, that a devisee shall be liable, in the same manner as any heir should have been, for not confessing the lands to him descended. This statutory language recognized and made applicable to devisees the rule that a defendant confesses assets if, by his plea, he neither admits nor denies

them. The result is that in the case in hand neither the declaration nor the plaintiffs' proof was defective in this particular; that the defendant, by passing over the subject of assets and pleading merely the general issue, admitted that she had received by devise lands sufficient to answer the plaintiffs' claim, and that the form of the judgment is correct. Upon this general subject the following cases may be consulted : *New Jersey Insurance Co.* v. *Meeker,* 8 *Vroom* 282 ; *Fredericks* v. *Isenman,* 12 *Id.* 212 ; *Stone* v. *Todd,* 20 *Id.* 274 ; *Dodson* v. *Taylor,* 24 *Id.* 200 ; *Muldoon* v. *Moore,* 26 *Id.* 410.

The other ground for nonsuit is thus stated in the fifth assignment of error : "Because it fully appears that the money was due to the legal representatives of Charles Theis and not to the plaintiffs, and further because these plaintiffs are not shown to have loaned the money jointly or otherwise." In order that this may be intelligible it is necessary to make a further statement of fact. This is an action to recover money lent. The testimony indicates that the plaintiffs carried on business in Philadelphia under the name of Weger Brothers ; that on April 13th, 1889, George Myers, the devisor of the defendant, as the result of a financial transaction at the office of Weger Brothers, in which Charles T. Weger, one of the plaintiffs, participated, obtained a loan of $500; that the payment was made by a check to the order of George Myers, on which he got the money ; that the loan was recorded in the books of Weger Brothers, and that it was continued and that interest was paid on it for several years. Joseph B. Wischman, a witness for the plaintiffs, testified that he is bookkeeper for Weger Brothers and was so employed in 1889, and that he drew up the check in question. Charles T. Weger signed it. The bill of exceptions does not contain a copy of the check. The following questions and answers occur in the testimony of Mr. Wischman :

"*Q.* Why did you give George Myers this check ? "

"*A.* Why, he asked for a loan of $500 and Mr. Weger authorized me to make out the check.

"*Q.* This loan was from Weger Brothers?

"*A.* Yes, sir; at that time as Charles Theis' executor."

In the cross-examination of Charles T. Weger the following questions and answers occur:

"*Q.* This check is signed by you as executor of Charles Theis?

"*A.* He was my grandfather.

"*Q.* Was this money loaned out of the estate of your grandfather to George Myers?

"*A.* Simply my brother and I; my brother was not twenty-one; that is all.

"*Q.* Well, it was still in the estate?

"*A.* Still in the estate; yes, sir."

From this testimony it appears that the plaintiffs assumed to be the executors of the estate of Charles Theis and that the check in question was signed by one of the plaintiffs, in their name or on their behalf, in that capacity. The fifth assignment of error above quoted consists of these two propositions—that there was no evidence from which the jury could conclude that the plaintiffs had made the loan sued on, and that if there was a loan the right to recover it belonged to the plaintiffs as executors of Charles Theis and not as individuals. The first proposition is not well founded. There was evidence to go to the jury tending to show that the plaintiffs made the loan. The idea that underlies the second proposition is that there is an incongruity between the individual right of action asserted by the declaration and the proof of a payment made by the plaintiffs in a representative character. It is supposed that such proof does not support the assertion of such a right. There are two answers to this. In the first place, the evidence on behalf of the plaintiffs is consistent with the idea that their representative character entered into the payment but not into the borrowing and lending contract, which was independent of the affairs of the Theis estate. In this view the objection relates to an immaterial matter. It is no concern of a borrower where the lender gets the money that he pays. In the second place, as

will appear from the following citations, the supposed incongruity does not exist and the proof did support the right of action.

The law is thus compactly stated by Mr. Justice Buller, in *Gallant* v. *Bouteflower*, 3 *Doug.* 34, 36 : "Where the cause of action accrues in the lifetime of the testator, the executor must sue as such ; where it accrues after his death, the executor may sue as such or not. Where the sum recovered will be assets, I think he may always declare as executor." To the same effect is *Wms. Ex.* 878. In *Norcross* v. *Boulton*, 1 *Harr.* 310, 312, the rule is thus stated by Chief Justice Hornblower : " When an executor prosecutes an action, which he has in the right of his testator—that is, an action which accrued to his testator in his lifetime, and is transferred to him as executor, or which is founded on or grows out of a contract made with the testator, or an injury done to him in his lifetime—and fails in such action, he shall not pay costs. But where an executor brings trover, founded, as in this case, upon his own possession, or any other action which has accrued *to him* upon *his own* transactions as executor, or for an injury done to the property of the testator since his death, he is presumed to know the facts of his case and the justice of his claim ; and, in such case, he may sue in his own name, and therefore shall pay costs if he fails." In *Stewart* v. *Richey*, 2 *Harr.* 164, the plaintiff brought suit in his own name on an arbitration bond given to him " as administrator of John Richey." A ground of demurrer was that the plaintiff should have sued as administrator. Chief Justice Hornblower says : " The action is rightly brought by the plaintiff in his own name. He might, indeed, have called himself ' Thomas G. Stewart, administrator of,' &c., for the purpose of describing himself, but such description was unnecessary. If he had sued *as* administrator, it would have been wrong ; or the addition of those words would have been surplusage, and he would have been liable to costs, notwithstanding he had thought proper to sue in his representative character." A later sentence in the opinion says that where an action

accrues to the executor on a contract made with him as such, it "may and ought to be brought in the proper name of the executor and administrator, describing himself as such, but not *as* executor or administrator." The word "ought" seems inconsistent with the previous declaration that in such a case descriptive words are unnecessary, and can mean only that their use is appropriate and to be recommended. The head-note to *Clark* v. *Willet*, 30 *Vroom* 308, says that where an action accrues to an executor upon a contract made with him as such, it should be brought in his proper name, describing himself as such executor. This statement does not occur in the opinion. It is evidently a question of the merest form whether a personal representative who sues thus in his own right shall describe himself by his addition. The conclusion is that this declaration, setting up an individual right of action in the plaintiffs, is supported by proof of a contract in making which they purported to be executors. Their right to have their loan repaid does not depend on formal proof of their executorship and would not be strengthened thereby. These considerations dispose of the second ground for nonsuit, and also of certain exceptions to the admission of evidence on which error has been assigned.

The defendant further assigned for error the admission of the plaintiff's books, upon the ground that a loan of money cannot be so proved. This is the rule. *Inslee* v. *Prall*, 1 *Dutcher* 665. It does not appear, however, that any books were admitted. One book only, the cash-book, was produced. So far as the record shows it was not received in evidence. The trial judge distinctly stated that it was available only as a memorandum to be used by Mr. Wischman, who made the entries, to refresh his memory. He was allowed to read from the book the following entry: "April 13, 1889, George Myers, Atlantic City, cash for note at one year, five per cent.," and to say that the book contained a record of the successive annual renewals of the note down to April 7th, 1894, when it amounted to $525, of which $25 was one year's interest at five per cent. It does not appear that the witness was testifying

from the book, except in reading the entry above quoted. He said, in answer to a question from the court, that he was using "the books," referring apparently to the cash-book, merely to refresh his recollection. This was permissible. *North Hudson County Railway Co.* v. *May,* 19 *Vroom* 401, 403 ; 1 *Phil. Ev.* *586, *note* 170 ; 2 *Id.* *917, *note* 587. Nor is there any substance in the objection that the witness should not have been allowed to read to the jury the above-mentioned extract. It is said that a memorandum is for mere reference, and can be used only to excite the recollection. This is too narrow a statement of the rule. So strict a limitation would make memoranda unavailable in many cases where they are of value. The use by a witness of his own memorandum, made at or near the time of the events recorded, is not merely to refresh the memory by reviving faint impressions, but also to supplement the memory by preserving details that would otherwise be forgotten. In a case of the latter class the witness is able to prove the details, not by remembering the particulars that compose them, but because the circumstances under which the memorandum was made afford satisfactory assurance that at the time of the entry its contents were known by the witness to be true. It follows that a witness, in using his own memorandum, may not merely refer to it, but may also testify from it. It may be added that the use of a memorandum rests very much in judicial discretion.

The defendant further assigned for error the admission of an unendorsed note, reading as follows :

"$525.           PHILADELPHIA, April 7th, 1894.

"One year after date I promised to pay to the order on myself, five hundred and twenty-five dollars, at the Consolidated National Bank, without defalcation for value received.
         "(Signed)     GEORGE MYERS."

It is important to remember that this note was not the foundation of the action. The plaintiffs did not sue under section 30 of the Practice act, declaring on the money counts

alone, and annexing to the declaration a notice containing a copy of the note with the endorsement and stating that the action is brought to recover the amount due thereon. The notice in this case reads as follows: "Notice is hereby given that this action is brought to recover the amount due the plaintiffs, for money loaned by them to George Myers in his lifetime, and charged against him on the plaintiffs' books, and for which he also gave to the plaintiffs, as an evidence of said debt, a certain promissory note, and which he failed or neglected to endorse, of which the following is a true copy." (Here follows a copy of the note.) The note bears date nearly five years after the date of the loan. Unendorsed it proved nothing. If it had been endorsed its effect would have been merely cumulative. No injurious error was committed in receiving it.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GARRISON, LIPPINCOTT, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 13.

*For reversal*—None.