ETTELSON et al. v. METROPOLITAN
LIFE INS. CO.

No. 9273.

Circuit Court of Appeals, Third Circuit.

Argued April 21, 1947.

Decided Nov. 18, 1947.

David Stoffer, of Newark, N. J. (Frazer, Stoffer & Jacobs, Arthur T. Vanderbilt and G. Dixon Speakman, all of Newark, N. J., on the brief), for appellants.

George W. C. McCarter, of Newark, N. J. (Nicholas Conover English, of Newark, N. J., on the brief) for appellee.

Before MARIS, GOODRICH and O'CONNELL, Circuit Judges.

MARIS, Circuit Judge.

This action was originally brought by the plaintiffs in the Supreme Court of New Jersey to recover amounts alleged to be due them as beneficiaries on four policies of life insurance issued on September 14, 1938 by the defendant, Metropolitan

Life Insurance Company, on the life of Richard Ettelson. The policies were delivered in New Jersey and took effect as contracts there. They are, therefore, governed by the law of that state. The policies comprised one for $5,000 naming the insured's son Adrian as beneficiary, one for $10,000 naming the insured's daughter Harriet as beneficiary, and two aggregating $25,000 naming the insured's daughter Doris as beneficiary. The insured reserved the right to change the beneficiaries. The insured died on July 11, 1939 of a coronary thrombosis.

The case was removed by the defendant to the United States District Court for the District of New Jersey and a jury trial was demanded by the plaintiffs. The defendant filed an answer setting up as a defense to the action that the policies were procured by fraud in the form of wilful misstatements of material facts by the insured. Specifically, the answer, as amended at the trial, alleged that the insured had answered "No" to question 11(c) in Part B of the application for the insurance, which question asked: "Have you ever had any ailment or disease of * * * The Stomach * * *?". The amended answer also alleged that the insured had answered "Yes. Cold, 1 attack, Jan. 1938. about 1 week. Not sick. rest at home. Cured.—Dr. Levy. Passaic." to question 12(g) which asked "Have you consulted a physician for any ailment or disease not included in your above answers?". The amended answer further alleged that the insured had answered "None" to question 13 which asked "What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by, within the past five years? If none, so state." and that he had signed a concluding certificate to the application reading "I hereby certify that: (1) I have read the answers to the questions in Part A and Part B hereof, before signing, (2) they have been correctly written, as given by me, (3) they are full, true and complete, and (4) there are no exceptions to any such answers other than as stated herein." The answer, as amended, set up as a defense that "Whereas, in fact the said insured had had a disease of the stomach, namely, a post-pyloric penetrating ulcer, in January and February of 1938, and whereas, in fact the said insured had, in addition, consulted physicians for an ailment or disease of the stomach, namely, Doctors Levy and Roemer, in January and February, 1938. Wherefore, these statements of the insured in answer to questions 11(c), 12(g), 13 and the concluding question beginning, 'I hereby certify,' * * * or some one or more of them, were false and fraudulent in that he failed to disclose such disease, consultation and treatment, of which he had full knowledge, by reason whereof the said policy is void."

The defendant also filed a counterclaim asserting that the policies were procured by fraud in that they were issued as a result of material statements made by the insured which were false in fact and which, therefore, entitled the defendant to the rescission of the policies, and that the defendant was without an adequate remedy at law. The counterclaim asked the court to restrain the further prosecution of the action at law and to decree the rescission of the policies. The counterclaim set out in paragraphs 9, 10 and 11 the answers to questions 11(c), 12(g) and 13, respectively, which we have quoted, and alleged that "At the time of, and prior to his said application for insurance, the said Richard Ettelson was in unsound health and was suffering from a number of serious ailments and diseases and was consulting physicians in connection therewith. He was consulting Dr. Herman Levy for an affection of his heart from which he suffered and from which he subsequently died. He was also consulting Dr. Levy for ulcers of the stomach. In connection with his medical treatments, x-ray examinations were made of his stomach which disclosed that he was suffering from ulcers of the stomach and an electrocardiogram was made of his heart which disclosed a serious heart condition.[1] In

---

[1] No evidence was offered at the trial with respect to the insured's alleged heart condition which was the subject of question 11(b) of the application set out in paragraph 8 of the counterclaim.

the said master application for the said policies of insurance, he failed to disclose any of these facts which were material to his application for insurance, and which, if known by the counterclaimant, would have resulted in a refusal by said counterclaimant to issue the said policies of insurance. The statements which he made in his said master application for said policies specifically referred to in paragraph 8 and 9 of this counterclaim were false in fact, and the statements which he made in his said application, specifically referred to in paragraphs 10 and 11 of this counterclaim were false in fact in that he failed to disclose the material facts in those two paragraphs referred to."

The plaintiffs moved to dismiss the counterclaim. The district court denied the motion and ordered that the issues raised by the counterclaim be heard before the trial of the plaintiffs' action. D.C. 42 F. Supp. 488. On appeal the latter order was held to be appealable as being in the nature of an injunction,[2] and was reversed by this court. 3 Cir., 137 F.2d 62. We held that the issue of fraud in the procurement of the policies which was raised by the counterclaim was provable in the district court as a defense to the plaintiffs' action upon the policies and was, therefore, an issue which must be submitted to the jury and not decided in limine by the court.

The question involved on the former appeal undoubtedly arose from the fact that in New Jersey, contrary to the situation in the federal judicial system, the rules of law and equity are administered in separate courts with the result that in actions at law purely equitable defenses are not available. Accordingly in actions upon policies of life insurance in the New Jersey courts of law only that kind of fraud is available as a defense which involves such wilful misstatement of material facts

as would support a common law action of deceit.[3] Such fraud the New Jersey courts have called "legal fraud". The New Jersey Court of Chancery, however, recognizes that honest misrepresentations of material facts in the application for a policy may constitute a fraud upon the insurance company which will entitle the company to a decree rescinding the contract.[4] Such misrepresentations the Court describes as "equitable fraud". Accordingly in New Jersey it is necessary for an insurance company which seeks to rely upon fraud of this latter type to cast its defense into the form of a suit in the Court of Chancery for the rescission of the policy which is being sued upon at law.

It was doubtless in the light of the New Jersey procedure that the defendant's counterclaim in the present case was drawn. In accordance with that practice the counterclaim alleged material representations which were merely false in fact, whereas the amended answer alleged material representations which were false and fraudulent to the knowledge of the insured. Our holding on the former appeal was that any and all species of fraud may in the federal courts, contrary to the New Jersey practice, be submitted directly to the jury as a defense to the plaintiffs' recovery upon the insurance policies and that preliminary consideration of the counterclaim with a view to the entry of a decree cancelling the policies sued on was not in accord with federal practice. Our decision necessarily involved treating the counterclaim, under Federal Rules of Civil Procedure, rule 8(c), 28 U.S.C.A. following section 723c, as a supplemental answer to the plaintiffs' complaint and not as a pleading seeking affirmative relief.[5]

Following the remand of the case it was brought on for trial before a jury in the

[2] The Supreme Court so decided upon certificate from this court. Ettelson v. Metropolitan Life Ins. Co., 1942, 317 U. S. 188, 63 S.Ct. 163, 87 L.Ed. 176.

[3] Duff v. Prudential Insurance Co., 1917, 90 N.J.L. 646, 101 A. 371; Urback v. Metropolitan Life Ins. Co., 1943, 130 N.J.L. 210, 211, 32 A.2d 337, 338.

[4] Metropolitan Life Insurance Co. v. Somers, 1946, 137 N.J.Eq. 419, 45 A.2d

188; Metropolitan Life Ins. Co., 1941, v. Tarnowski, 130 N.J.Eq. 1, 20 A.2d 421.

[5] Affirmative relief by way of cancellation of the policies would under the federal procedure be wholly unnecessary in the circumstances of this case although under different circumstances resort to such relief might be necessary and appropriate. See Enelow v. New York Life Ins. Co., 1935, 293 U.S. 379, 384, 55 S. Ct. 310, 79 L.Ed. 440.

district court. At the trial the insured's physician, Dr. Levy, testified that he. had treated the insured between January 6 and February 14, 1938 but had only a record of the dates and not of any diagnosis or treatment. Another physician, Dr. Roemer, testified on behalf of the defendant that he had made an X-ray examination of the insured at the request of Dr. Levy on January 11 and 12, 1938 and had sent a report to Dr. Levy, making a diagnosis of a penetrating. post-pyloric ulcer. A third physician, Dr. Cohen, testified that at the request of Dr. Levy he had made a blood count of the insured and had sent the report of it to Dr. Levy. Dr. Crohn, a stomach specialist, testified that Dr. Levy referred the insured to him on March 27, 1939. The trial judge refused to permit Dr. Crohn to testify concerning the history given to him at that time by the insured but he admitted in evidence the office records of Dr. Crohn under the Federal Shop Book Rule Act[6] and the doctor was permitted to read certain entries therein to the jury. Evidence was offered by plaintiffs to show general good health of the insured.

At the close of the testimony the trial judge submitted the case to the jury. He took the view that the mandate of this court upon the former appeal required him to submit to the jury separately the defense raised by the answer that the policies were void because procured as the result of wilful misrepresentations of material facts, which in accordance with the New Jersey practice he described as "legal fraud", and the defense raised by the counterclaim that the policies were void because they were procured as the result of innocent misrepresentations of material facts, which he described as "equitable fraud". Accordingly he directed the jury to bring in two verdicts—one bearing on legal fraud and the other bearing on equitable fraud. Following the trial judge's instructions the jury brought in two verdicts. One verdict was for the plaintiffs on legal fraud and the other was for the defendant on equitable fraud. Upon these verdicts the court entered a judgment dismissing the plaintiffs' complaint and directing that the policies of insurance sued on be delivered up for cancellation upon refund by the defendant of the premiums paid thereon with interest. From this judgment the plaintiffs took the present appeal.

The first question with which we are presented is whether the procedure adopted by the trial judge for the submission of the case to the jury for two verdicts was proper and in accord with the mandate of this. court. We are satisfied that it was neither. Nothing in our former opinion required that two verdicts be taken which might prove to be, and in this case actually turned out to be, inconsistent with each other. Nor do we know of any basis for such practice. What we held on the previous appeal was that both the defense set up in the answer and the defense set up in the counterclaim were available to the defendant at the trial of the plaintiffs' action and that if either was established. to the satisfaction of the jury the defendant would be entitled to a verdict. As. a practical matter it would seem obvious. that the defendant needed only to rely at the trial upon the defense of "equitable fraud" which was set up in the counterclaim and that it served no useful purpose for the question of wilfulness, which is the distinctive element involved in the New Jersey concept of "legal fraud", as contrasted with "equitable fraud", to be submitted to the jury. By the same token the action of the trial judge in procuring from the jury a separate verdict upon the issue of "legal fraud" was harmless error if his charge upon the question of "equitable fraud", as to which the jury found a verdict for the defendant, was correct, and there was evidence to support that verdict. We are thus brought to consider the instructions of the trial judge upon this subject. Preliminarily we must ascertain the present state of the law of New Jersey with respect to it.

As has already been said the New Jersey courts have held that a life insurance policy will be declared invalid upon the ground of fraud and ordered to

---

[6] Act of June 20, 1936, c. 640, § 1, 28 U.S.C.A. § 695.

be cancelled if it is shown that it has been issued by the insurance company in reliance upon misrepresentations of material facts even though innocently made. This is what, following the New Jersey practice, we have called "equitable fraud." [7] The rule, however, is not quite so sweeping as it has just been stated. While it applies in full force to objective questions in an application for insurance the answers to which must be within the applicant's knowledge, such, for example, as whether he has consulted a physician or has been treated at a hospital, it does not apply to the same extent in the case of subjective questions, such, for example, as whether the applicant has had a given disease or ailment. In the case of a question of this sort the New Jersey courts have held that the question is directed toward probing the knowledge of the applicant and determining the state of his mind and if the answer is a correct statement of the applicant's knowledge and belief it is not to be regarded as a misrepresentation.[8]

When we turn to the answers which the defendant in its counterclaim asserts to be fraudulent we see that questions 12(g) and 13 which inquired as to consultations with and treatments by phy-

sicians, hospitals, etc., were purely objective in character, whereas question 11(c) which inquired as to whether the insured had ever had any ailment or disease of the stomach was of the subjective type. It was accordingly proper for the trial judge to instruct the jury, as he in effect did, that if they found the insured's answer to either question 12(g) or 13 to have been relied on by the defendant and to be untrue in fact the defense of fraud was made out and the verdict should be for the defendant.[9] In the case of question 11(c), however, it was incumbent upon the trial judge to charge the jury that the defense of fraud would be made out only if they found the answer to the question untrue in the sense that it did not truly represent the insured's actual opinion and belief as to whether he had ever had any ailment or disease of the stomach. Since the trial judge did not so instruct the jury it necessarily follows that the judgment must be reversed and a new trial directed unless we find, as the defendant strongly asserts, that the uncontradicted evidence establishes that the insured made untrue answers to questions 12(g) and 13 which were relied upon by the defendant. For under these circumstances, says the defendant, a verdict should have been di-

[7] See note 4. The New Jersey courts so hold in spite of the statute, N.J.S.A. 17:34–15, subd. d, originally enacted in 1907, which provides that "all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties." Compare Metropolitan Life Ins. Co. v. Tarnowski, 1941, 130 N.J.Eq. 1, 20 A.2d 421, with Shapiro v. Metropolitan Life Ins. Co., 1932, 110 N.J.Eq. 287, 159 A. 680.

[8] Shapiro v. Metropolitan Life Ins. Co., 1933, 114 N.J.Eq. 378, 168 A. 637; Metropolitan Life Ins. Co. v. Urback, 1946, 138 N.J.Eq. 108, 46 A.2d 905. Thus in the Shapiro case the Court of Errors and Appeals of New Jersey said, 114 N.J. Eq. at page 381, 168 A. at page 638:

"The questions relating to the state of insured's health, and his affliction during the specified period with any of the named diseases, necessarily were directed to insured's knowledge only. They sought to probe the insured's mind, and if he answered truthfully to the full extent of his knowledge there was, necessarily no

false representation. The questions called only for the facts within the insured's knowledge, and his bona fide belief and opinion. Even in the case of warranties, the rule adopted by this court is that, with respect to questions as to matters that the insurer must know are not within the personal knowledge of the applicant, and with respect to those that call, not for definite statements of fact, but for statements of belief or opinion, the letter of the contract is to be controlled by its spirit and purpose, and the answers will be deemed warranties only of the bona fide belief and opinion of the applicant."

[9] The trial judge charged the jury that the answers given to all three questions when read in connection with the concluding statement or declaration of the application constituted in law material representations. This was a correct instruction since materiality is a question of law to be determined by the court (Urback v. Metropolitan Life Ins. Co., 1942, 127 N.J.L. 585, 23 A.2d 568), and these answers were plainly material to the risk.

rected by the trial judge in its favor in any event.

We turn then to question 12(g) and the answer which the insured made to it. That question was "Have you consulted a physician for any ailment or disease not included in your above answers?" The insured's answer was "Yes. Cold. 1 attack. Jan. 1938. about 1 week. Not sick. rest at home. Cured.—Dr. Levy, Passaic." The uncontradicted evidence is that at the time of the cold referred to in his answer the insured was also treated by Dr. Levy for a stomach condition and that Dr. Levy sent the insured to Dr. Roemer for X-ray studies and to Dr. Cohen for a blood count. It will be noted, however, that question 12(g) is framed in the singular. It is held in New Jersey that a question framed in this form is fully satisfied by an answer giving a single instance of the kind queried after.[10] Accordingly we conclude that the insured's answer to question 12(g) cannot be regarded as other than true and sufficiently complete.

When we come to question 13 the problem is not so simple. That question inquired of the insured as to what physicians not named above in the application he had consulted or been treated by within the five years preceding the application. To this question he answered "None". The uncontradicted evidence showed, as we have just pointed out, that he had been sent by Dr. Levy to Dr. Roemer for X-ray studies, and to Dr. Cohen for a blood count. The defendant strongly argues that we should hold as a matter of law that these visits by the insured to the two physicians named were consultations with physicians within the meaning of question 13. Consequently, it urges, the jury should have been instructed that since the uncontradicted evidence established that the insured's answer to question 13 was untrue and that it was relied on by the defendant, their verdict must be for the defendant. We do not so hold. On the contrary we think it may with some logic be urged that Dr. Levy rather than the insured consulted Dr. Roemer and Dr. Cohen. Indeed we believe that the New Jersey courts would hold that if Dr. Levy for his own assistance in the diagnosis and treatment of the insured and without any request on the insured's part, sent the latter to Dr. Roemer for X-ray studies and to Dr. Cohen for a blood count and the reports of those physicians were made directly to Dr. Levy and not to the insured, the visits would not constitute consultations with physicians within the meaning of question 13. For we note that the New Jersey Court of Errors and Appeals has recently given a rather narrow construction to the word "consulted" as used in this question.[11] Moreover to the extent that the question under the circumstances of this case was ambiguous New Jersey law requires that the ambiguity must be resolved against the defendant in determining whether the answer to it was false.[12] We conclude that the question whether

[10] Henn v. Metropolitan Life Ins. Co., 1902, 67 N.J.L. 310, 51 A. 689; Urback v. Metropolitan Life Ins. Co., 1943, 130 N.J.L. 210, 32 A.2d 337; Metropolitan Life Ins. Co. v. Urback, 1946, 138 N.J. Eq. 108, 46 A.2d 905.

[11] The case to which we refer is Metropolitan Life Ins. Co. v. Urback, 1946, 138 N.J.Eq. 108, 46 A.2d 905, 906. In that case it appeared that the insured had fainting spells and called upon his physician for a check-up. The latter sent him to a hospital where he remained five days and received numerous tests. The findings of the hospital were sent to the insured's physician who, after studying them, informed the insured that they did not find anything the matter with him. To question 13 in the application for insurance which was similar in form to the application in the present case the insured answered "None". The answer was alleged to be fraudulent. Vice Chancellor Bigelow in an opinion which the Court of Errors and Appeals adopted said: "Urback went to Dr. Finesilver and to the New York Hospital to learn whether he had any ailment or disease. He was told that they found none. He did not consult them, and was not treated by them for any illness or ailment. His answers were truthful."

See also Elliot v. Grand Lodge, Brotherhood of Railway Trainmen, 1936, 231 Mo.App. 49, 95 S.W.2d 829.

[12] Shapiro v. Metropolitan Life Ins. Co., 1932, 110 N.J.Eq. 287, 290, 159 A. 680, 682; Urback v. Metropolitan Life Ins. Co., 1943, 130 N.J.L. 210, 214, 32 A. 2d 337, 339.

the visits of the insured to Dr. Roemer and Dr. Cohen were consultations with a physician, as well as the question whether the answer was relied on by the defendant were questions of fact which it was within the province of the jury to decide from all the evidence in the case under proper instructions from the court. Accordingly we hold that the trial judge properly refused to direct a verdict for the defendant.

 It remains only to consider the plaintiffs' contention that the court erred in admitting into evidence the record of Dr. Crohn containing statements made to him by the insured on March 27, 1939—six months after the policies were issued. As we have seen, the trial judge admitted Dr. Crohn's record under the Federal Shop Book Rule Act. That Act provides an exception to the established rule that hearsay evidence is not admissible. Its purpose is to enable the admission of systematically entered records without the necessity of identifying, locating and calling as witnesses the individuals who kept the records.[13] In this instance, however, the person who kept the record, Dr. Crohn, was called as a witness and was in a position to testify to the matters which the record disclosed. Accordingly the necessity for invoking the act was wholly absent. The paper which Dr. Crohn produced, however, constituted a record of his past recollection of the insured's statements to him. This record, which he verified and adopted, thus became, when the defendant offered it, a present evidentiary statement on the part of Dr. Crohn which, to the extent that its contents were relevant, was admissible in evidence in the discretion of the trial judge.[14] It follows that the admission of Dr. Crohn's record was not erroneous if his verbal testimony as to the statements which the assured had made to him would have been admissible.

 We think, contrary to the ruling of the trial judge, that Dr. Crohn's testimony with respect to the statements made to him by the insured and which he recorded should have been admitted. These statements of the insured tended to prove that at the time he made application for the insurance he had knowledge that he had an ailment or disease of the stomach. This was one of the crucial issues in the case. It is the rule in the federal courts that such declarations by the insured are admissible against the beneficiary in a suit on the policy when, as in this case, the right to change the beneficiary was reserved by the insured.[15] Since the question here is merely as to the admissibility of Dr. Crohn's testimony that rule, federal or state, which makes it admissible is to be followed under Federal Rules of Civil Procedure, rule 43(a), 28 U.S.C.A. following section 723c.

The judgment of the district court will be reversed and the cause will be remanded for a new trial.

---

[13] N. Y. Life Ins. Co. v. Taylor, 1944, 79 U.S.App.D.C. 66, 147 F.2d 297, 302.

[14] 3 Wigmore on Evidence, 3 Ed., §§ 734, 736, 737(2), 754, 755; Myers v. Weger, 1898, 62 N.J.L. 432, 42 A. 280; The J. S. Warden, 3 Cir., 1914, 219 F. 517; Buckley v. United States, 3 Cir., 1929, 33 F.2d 713; Wattenmaker v. United States, 3 Cir., 1929, 34 F.2d 741; Batts v. Eastern Mut. Life Corporation, 1939, 123 N.J.L. 121, 8 A.2d 78; Dowling Bros. Distilling Co. v. United States, 6 Cir., 1946, 153 F.2d 353.

[15] Self v. New York Life Ins. Co., 8 Cir., 1932, 56 F.2d 364, 366; Prudential Ins. Co. of America v. Loewenstein, 4 Cir., 1935, 76 F.2d 479.