**474**

D'ANGELO et al.

v.

COLUMBIA FIRE INS. CO. OF OHIO.

Civ. A. No. 10304.

United States District Court
E. D. New York.

Jan. 25, 1954.

Daniel Katz, New York City, for plaintiffs.

Powers, Kaplan & Berger, New York City, for defendant. David A. Ticktin, Jacob Goodman, New York City, of counsel.

GALSTON, District Judge.

This is an action to recover the value of a diamond ring which was owned by the plaintiffs and insured by the defendant.

The action was originally instituted in the Supreme Court of the State of New York, County of Kings. On petition of the defendant, it was removed to this court on the ground of diversity of citizenship, the plaintiffs being citizens of the State of New York, residing in Brooklyn, and the defendant being a corporation duly organized and existing under the laws of the State of Ohio.

The defendant company issued a "Jewelry-Fur Floater Policy" dated February 26, 1947, to the plaintiffs, in the amount of $7,750, insuring the following items of property:

> "1. One (1) Jules Jurgeson,
>   14 Kt. Solid gold man's
>   bracelet watch ........ $  500.00
> "2. One (1) Lady's diamond
>   and platinum solitaire
>   ring, that contains a
>   large emerald-cut diamond set in the center,
>   weighing about seven
>   and one-half carats,
>   (7½ cts.), Imp. ....... 7,250.00
>
>                                 $7,750.00"

The policy was issued for a one-year term, expiring February 26, 1948. Effective January 5, 1948, the term of the policy was extended for one year, to expire February 26, 1949, insuring only the diamond ring described in the original policy in the amount of $7,250.

The complaint alleges the loss of the diamond ring on February 4, 1949, the filing of a report of the loss and claim for its value to the insurance company, and its failure to make payment on the claim. The defendant's answer is a general denial of the material allegations in respect to the loss or theft of the ring and the value thereof.

The evidence discloses that the plaintiff, Josephine D'Angelo, kept the ring, a gift from her husband, the plaintiff, James D'Angelo, in a small covered porcelain dish on the dresser in the bedroom of their home. On February 4, 1949, she went for the ring, intending to wear it to a dinner engagement, but could not find it in the porcelain dish. She looked for it in the dresser drawers, about the room and then through the house generally, but could not locate it. The loss was reported to the police that night, but the ring was not found and

has not since been found. A report of the loss was duly sent to the insurance company, and a claim filed.

The plaintiff, Josephine D'Angelo, testified that the last time she saw the ring was on January 31, 1949. It appears that she wore it when she went out that night. Her best recollection is that she returned the ring to the porcelain dish upon her return home. However, of that fact she is not sure because of excitement attending her discovery, upon her return home, that her husband had accidentally taken an overdose of sleeping tablets. A number of friends and relatives were in and out of the room between January 31st and February 4th, during the husband's illness. The D'Angelos made no inquiries of these people with respect to their knowledge, if any, of the possible whereabouts of the ring.

The plaintiff, James D'Angelo, testified that he has been a salesman since 1935. He estimated his annual earnings between 1939 and 1948 as follows:

| | |
|---|---|
| 1939 | $ 6,746.00 |
| 1940 | 7,175.23 |
| 1941 | 8,861.03 |
| 1942 | 14,268.24 |
| 1943 | 10,974.45 |
| 1944 | 7,766.05 |
| 1945 | 6,054.41 |
| 1946 | 10,087.47 |
| 1947 | 4,658.40 |
| 1948 | 5,338.90 |

He had no other source of income. His family consisted of his wife, Josephine, and two children. The family living expenses average $70 per week.

D'Angelo testified that he purchased the diamond ring some time in 1945 or 1946 from one Salvatore Bianco, a friend who, with one of D'Angelo's brothers, operated a funeral service establishment. It appears that D'Angelo, during the course of a conversation with Bianco, indicated a desire to buy his wife a gift for their fifteenth wedding anniversary. Bianco offered to show him two diamond rings which he wanted to sell preparatory to taking a trip to Italy. D'Angelo decided to buy the seven and a half carat ring and paid Bianco $6,000 in cash. A day or two later Bianco requested an additional payment of $1,200, stating that there was a tax in that amount to be paid on the ring. D'Angelo paid the $1,200, again in cash. He stated that he did not question Bianco in any way and that he did not have the ring appraised before purchasing it.

On February 4th, James D'Angelo was visiting with a friend in New Jersey. When informed by telephone of the disappearance of the diamond ring, he returned home to comfort his wife and join in the search for the ring. He denied having sold, pawned, hidden or given away the ring in question. He stated he knew nothing about what might have happened to it.

There is in evidence an appraisal report, dated March 11, 1946, antedating the issuance of the policy in suit of M. Levy & Co., Inc., jewelers located at 134 Fulton Street, New York City. It reads:

"One lady's diamond and platinum solitaire ring, that contains a large emerald-cut diamond set in the center, weighing about seven and one-half carats, (7½ cts.); Imp., no other stones in the mounting.
"Value $7,250.00
"The above article has this day been appraised by us for Mr. James D'Angelo, of 228 Montrose Avenue, Brooklyn, N. Y.
"M. Levy & Co., Inc.
"By: (Harris Cott)"
There is stamped on the report the following:
"Commercial Union
Assurance Co., Ltd.
Mar 12 1946
Metropolitan
Department"

Mr. Harris Cott was called as a witness by the plaintiffs, and testified that he was associated with M. Levy & Co. on March 11, 1946 and had appraised the article described in the report of that date referred to above, and that he was

the Harris Cott whose signature appears thereon. He also testified that he has been associated with M. Levy & Co. for about 34 years and that during the years of such association it was part of the regular course of business to make appraisals of diamonds for individuals and companies, mostly insurance companies, and to submit reports of his appraisals. He testified to making an appraisal on March 11, 1946 of the ring as described in the report, but admitted having no present independent recollection of the person who brought the ring in for an appraisal.

The defendant did not introduce any evidence either in support of its defense or to impeach the testimony of the plaintiffs' witnesses. It takes the position that "the testimony adduced in behalf of plaintiffs is incredible as a matter of law."

It questions James D'Angelo's testimony that he had $7,000 and more in the house, ready and available to use in purchasing the diamond ring. Furthermore, it argues that either some one took the ring between January 31st and February 4th, when visiting James D'Angelo during his illness, or D'Angelo himself disposed of it because of financial difficulties due to continued illness resulting in increased medical treatments and decline in earning capacity.

With respect to the theory of the loss of the ring through theft, it is noted that the policy covering the ring insures for all risks of loss or damage except as expressly excluded. Theft is not so excluded. Moreover, there is nothing in the evidence which throws suspicion upon the plaintiffs as entering into any conspiracy with others in a fraudulent attempt to collect the insurance. The defendant points to the fact that the D'Angelos failed to question any of their friends or relatives who were in and about their home during the husband's illness, as a suspicious circumstance. In the absence of some grounds to suspect that one or more of the persons having access to the room might have taken the ring, the failure to question is not of compelling significance.

In respect to possible financial difficulties, the defendant points out that James D'Angelo admitted he sold his wife's original engagement ring, containing a one-carat diamond, and had pawned, for $250, a wrist watch which he had purchased for between $310 and $350, because he "got tired of it". It appears that the engagement ring was sold some fifteen years ago, while the wrist watch was pawned some time in 1946 or 1947. However, James D'Angelo also testified that he always had more than enough ready cash to pay for whatever medical treatments he required. Thus in the absence of any evidence to the contrary, the basic question which is determinative here is the credibility of the plaintiffs' testimony, especially that of James D'Angelo.

If it is regarded as normal practice for a person to deposit his excess funds in a bank, the practice of the D'Angelos in keeping large sums around the house would be considered unusual. However, such practice is not so extraordinary as to require the court to reject D'Angelo's testimony that he had the cash available to purchase the ring.

The defendant also points to James D'Angelo's testimony to having had prior insurance on the ring for between $2,900 and $3,000, as casting doubt on its alleged value in the policy in suit. D'Angelo's explanation for the smaller amount of insurance is that he wanted to help a friend get started in the insurance business but didn't want a large policy. He testified that he obtained an appraisal of the ring at the time he applied for the earlier smaller policy. The only appraisal report in evidence is that made by M. Levy & Co. It is noted that the report is dated March 11, 1946, which is almost a year before the defendant first issued its policy to the plaintiffs. It is D'Angelo's testimony that the ring he took to have appraised and which is described in the report of M. Levy & Co., is the same diamond ring that was

insured under the policy with the defendant. It may be noted in this connection that the description of the ring as contained in the policy issued by the defendant is practically identical with that in the appraisal report.

The defendant contends that the appraisal report in evidence purports to be for a Commercial Union Assurance Co. Ltd., and denies having seen it before issuing its policy to the plaintiffs. The fact remains, however, that on February 4, 1949, there existed a policy issued by the defendant to James and Josephine D'Angelo, insuring the diamond ring described therein for $7,250. There is nothing in the terms of the policy requiring as a condition precedent of insurance that there be an appraisal report made for or presented to the defendant.

As noted, there was considerable excitement on the night of January 31st, when Josephine D'Angelo returned home to find her husband ill. In the circumstances it seems not unreasonable that she is not positive as to returning the ring to the porcelain dish. Consequently there exists the possibility that she misplaced it and that subsequently it was lost in some unknown manner. There is no showing of any reckless disregard for its safety, or showing of any fraudulent action on the plaintiffs' part.

■ The proof in respect to the purchase of the ring and the price paid for it is, of course, based solely on the testimony of James D'Angelo. It appears that the seller, Bianco, is dead, so that his testimony is not available. Without more, D'Angelo's testimony, although uncontradicted, would require close scrutiny in view of his interest in the case. However, in the light of the uncontroverted documentary proof evidenced by the appraisal report, which establishes the value of the ring at $7,250, as made by an uninterested expert source, it cannot be said that the testimony adduced by the plaintiffs is so improbable as to require the court to reject it. Regardless of how much or in what manner the plaintiffs obtained the ring, the evidence discloses that on February 4, 1949, they had an insurable interest in a diamond ring insured by the defendant, which ring had been appraised at a value of $7,250. Consequently it must be concluded that the plaintiffs have presented sufficient proof to make out a prima facie case. In view of the fact that the defendant has failed to present any evidence, and that it has failed to impeach the plaintiffs' testimony in any material respect, there must be a judgment for the plaintiffs.

■ The defendant has devoted considerable argument to its contention that it was error to admit into evidence the appraisal report of M. Levy & Co. The report was admitted as "a record of past recollection," verified and adopted by the witness who recorded it in the regular course of his business. Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 164 F.2d 660, 667; Shimabukuro v. Higeyoshi Nagayama, App.D.C., 140 F.2d 13, 16; 3 Wigmore on Evidence (3d ed.) Secs. 734, 736(2), 754, 755.

The plaintiffs may have judgment.

Concurrently with this opinion, appropriate findings of fact and conclusions of law will be filed.