38 N.J. Super. 139 (1955)
118 A.2d 416
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RALPH R. CESTONE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1955.
Decided November 21, 1955.
*141 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. George Warren argued the cause for appellant (Mr. Italo M. Tarantola, attorney; Messrs. Warren & Stein, of counsel).
Mr. Herbert T. Heisel, Jr., Prosecutor of Hunterdon County, argued the cause for respondent.
*142 The opinion of the court was delivered by JAYNE, J.A.D.
The present defendant feels sufficiently aggrieved to prosecute an appeal from a judgment of the Hunterdon County Court rendered on February 19, 1955 imposing upon him a fine of $10. To him the judgment is vexatious because it constitutes an adjudication that he offended the law. He employs his undeniable right to have the propriety of the proceedings at his trial and his specified criticisms thereof subjected to our appellate consideration.
It will be both explanatory and expedient first to segregate from the evidence the undisputed and acknowledged facts.
At about 9:05 P.M. on February 14, 1954 the defendant was driving his automobile on a two-lane highway toward Flemington. His vehicle was traveling behind two others which were proceeding in the same direction. Unhappily the car immediately in front of him was occupied by two members of the State Police. The defendant turned his vehicle into the lane at his left and undertook to pass both of the cars in front of him. He successfully accomplished his undertaking but only by returning to the right lane in avoidance of an oncoming vehicle approaching from the opposite direction.
The troopers who witnessed his performance disapproved it and presently detained him. To moderate their reproach the defendant acknowledged to them that "it was a bad pass." Notwithstanding his conciliatory attitude, he was given a so-called ticket obliging him to answer a charge of violating R.S. 39:4-86. On March 9, 1954 the Municipal Court of the Township of Readington found him guilty of offending the provisions of the designated section of the statute and imposed upon him a fine of $10 and costs of $3.
The defendant appealed from this conviction to the Hunterdon County Court where after a trial de novo he was on February 19, 1955 again determined to have committed the alleged violation, and a fine of the same amount was imposed upon him.
*143 The section of the statute which the defendant was accused of violating contains the two following paragraphs of relevancy:
"The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless the left side is clearly visible and free of oncoming traffic for a sufficient distance ahead to permit the overtaking and passing to be made in safety.
The driver of a vehicle shall not drive to the left of the center of a highway in order to overtake and pass another vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of five hundred feet."
Preliminarily we may state that while there was a slight curve in the highway at the locality, it was not made evident that the defendant's view along the highway was obstructed within a distance of 500 feet. Therefore in the consideration of the defendant's alleged violation of the specified section of the statute, the distances between the respective vehicles assumed essential materiality in determining whether the lane to the left of the defendant in the direction in which he was proceeding was "free of oncoming traffic for a sufficient distance ahead to permit the overtaking and passing to be made in safety."
Neither the driver of the vehicle in front of the patrol car nor the driver of the oncoming vehicle was identified. The evidence for the prosecution was confined to the revelations of the two troopers, the competency and value of which have captured our particular attention.
Common observations would incline one to suppose that highway patrolmen with current frequency witness occurrences in which imprudent motorists pass or attempt to pass, not always without disaster, a vehicle or vehicles ahead of them in the face of another vehicle closely approaching from the opposite direction. Where there is no resultant collision between the vehicles or other injurious mishap, we are informed that it is not the practice of the state troopers to prepare and file a contemporaneous written report of such *144 an exhibition of impatient driving. There was none such concomitant report made in the present instance.
Probably attributable to the repetitive recurrence of such practices by motorists so commonly noticed by such patrolmen and the failure promptly to record the circumstances of the particular occurrence, the troopers testifying for the State in the present case were obliged to approximate the distances between the two vehicles proceeding ahead of the defendant and the remoteness of the oncoming vehicle at the time the defendant endeavored to pass. The troopers frankly acknowledged that their estimated measurements in those particulars were calculated from their reconstructed recollections and were not claimed to be precisely accurate.
The testimony disclosed that about 39 days after the event, having learned of the defendant's proposed appeal to the County Court, the two troopers visited the scene and cooperatively revivified a composite recollection of the details of the event for the anticipated purpose of testifying at the trial in the County Court. Trooper Poole composed in writing a statement expressive of their recollections and prepared an illustrative sketch or diagram of the portion of the highway, the relative positions and courses of the vehicles, and some indicated measurements. The diagram bears the following qualification:
"Measurements were taken by Trps Wallace W. Poole and Frank Goreski March 24, 1954 and must be considered as approximate distances due to the lapse of time between the violation and the time of the measurements being taken. Photographs have been taken by County photographer Thomas Carter and will accompany this diagram."
The photographs were not produced at the trial. Concededly the diagram was not drawn to scale, nor was the indicated radius of the curve pretended to be accurate. Indeed, an authentic drawing of that segment of the highway was displayed to us at the argument without objection which disclosed that the diagram submitted by the troopers conspicuously exaggerated the radius of the curvature. The sketch prepared by the troopers was, however, not only utilized *145 at the trial for purposes of elucidation but was over objection admitted in evidence and perhaps regarded as evidentiary.
But another aspect of the testimony of the troopers of more impressive significance comes into sight. As previously revealed, the troopers in the diction of Trooper Poole composed a belated written statement specially for use at the trial.
When Trooper Poole was requested at the trial to "please tell the Court what happened at the scene and time of the offense," he inquired, "May I read from the report, or should I try to go from what I remember a year ago?" Defendant's counsel objected to his reading the statement or so-called report. The judge then presiding in the County Court answered, "It is a trial de novo. The objection will be overruled. The objection will be noted on the record."
The witness Poole thereupon began, "According to the report (entitled), this states." The witness proceeded to read verbatim et literatim to the court the entire statement which he had admittedly prepared more than a month subsequent to the event purposefully to constitute his testimony at the trial. So in substitution it constituted his testimony, for despite objection it also was accepted as his evidence against the defendant.
It was obviously unnecessary for Trooper Goreski to re-read the prepared statement in evidence. The state of his recollection of the distance between the oncoming vehicle and that of the defendant at the time the latter determined to pass the vehicles ahead is truly exhibited by the following quotations from his testimony:
"Q. From your recollection of the time and place of the offense charged, could you with a reasonable degree of accuracy, estimate the distance that it was from the Cestone car when he attempted to pass the car ahead of the patrol car, to the car approaching in the opposite direction? A. I can't recall, sir.

* * * * * * * *
Q. When Cestone went to pass your car, could you see car number four at that time? A. Well, I saw headlights.
Q. And how far up the road would you say that was? A. I couldn't say."
*146 So much has been written in our precedential decisions and in our authoritative text-books of the permissive use of memoranda to refresh the mind of a witness "so that he can with safety be allowed to recur to them in order to remove any weakening of memory on his part, which may have supervened from lapse of time," and concerning the use thereof to revivify past recollections, and the inadmissibility of such memoranda in evidence in corroboration of the oral evidence or as affirmative, intrinsic proof since the deliverance of Lord Chief Justice Ellenborough in Henry v. Lee, 2 Chit. 124 (1814), that a comprehensive recitation and discussion of the authorities seems here to be unnecessary.
The special peculiarities in the present case are the absence of any fundamental disclosure that the witness Poole either required or actually employed the statement for the purpose of refreshing his present recollection, but being accorded the privilege either of imparting "what he remembered" or reading the prepared written statement, he chose the latter alternative. Indeed, the witness served only to introduce the statement in evidence. Cf. Springer v. Labow, 108 N.J.L. 68, 70 (Sup. Ct. 1931).
It is not to be implied from our decision in the present case that we favor an illiberal and impracticable view of the permissive use of a pertinent memorandum by a witness either to revive his present recollection or its use as a promptly recorded memorial of his past recollection. Vide, Myers v. Weger, 62 N.J.L. 432, 441 (E. & A. 1898); Cottentin v. Meyer, 80 N.J.L. 52, 55 (Sup. Ct. 1910); Kazanjian v. Atlas Novelty Co., 34 N.J. Super. 362, 370 (App. Div. 1955); 3 Wigmore, Evidence (3d ed.), 77, § 738; op. cit. p. 76.
We cannot, however, for reasons of pragmatical expedition bestow our approbation on a practice which in disregard of the state of the memory of the witness enables counsel merely to elicit from him that some time subsequent to the event he constructed in writing an account of the event with approximate details and thus surreptitiously introduce the *147 prepared statement in evidence in substitution for the testimony of the witness.
In the situation before us the admission of the statement as primary and affirmative evidence of the factual representations contained therein was erroneous. Crothers v. Caroselli, 126 N.J.L. 590 (E. & A. 1941); Jackson v. Pioneer Adhesive Works, Inc., 132 N.J.L. 397 (Sup. Ct. 1945); State v. Cleveland, 6 N.J. 316, 331 (1951); Dawson v. Holcomb, 4 N.J. Super. 563 (App. Div. 1949); Ciardella v. Parker, 10 N.J. Super. 537 (App. Div. 1950); Palatini v. Sarian, 15 N.J. Super. 34, 41 (App. Div. 1951); Burke v. Lincoln Transit Co. (App. Div., decided October 26, 1955, not yet officially reported); Wigmore on Evidence (3d ed.), §§ 759, 793; Annotation, 125 A.L.R. 19 et seq.; 58 Am. Jur. 337, § 607.
Next in our appellate inspection of the appendix accompanying this appeal comes the consideration of the degree of harmful or prejudicial effect upon the defendant's defense which was caused by the permitted use of the memorandum in substitution of the present recollections of Trooper Poole. Contrast Chmiel v. Yatsko, 124 N.J.L. 508, 510 (Sup. Ct. 1940). In that respect we observe that counsel for the defendant insisted that the proof of the defendant's guilt must be established beyond a reasonable doubt. The judge at the trial expressed his impression that such a burden does not rest upon the prosecution in quasi-criminal proceedings except in the so-called drunken driving cases, but that he would examine the law on the subject. However, he neglected to compose any findings of fact other than that implicit in his naked judgment of conviction, and we are left uninformed of whether he subsequently examined the pertinent law or determined the guilt of the defendant by a measurement of the mere preponderance of the evidence.
We recall the decisions in State v. Yaccarino, 3 N.J. 291, 295 (1949); Hill v. Borough of Collingswood, 9 N.J. 369, 378 (1952); Board of Health of Weehawken Tp. v. New York Central R. Co., 10 N.J. 294, 299 (1952); City of Newark v. Pulverman, 12 N.J. 105, 114 (1953); City of *148 Absecon v. Vettese, 13 N.J. 581, 584 (1953); State v. Dantonio, 18 N.J. 570, 582 (1955), in all of which it has been announced that in the prosecution of a defendant in a quasi-criminal proceeding the quantum of proof requisite to sustain a conviction must be beyond a reasonable doubt.
A recognition of the proper determinative test or standard in the evaluation of the evidence in the present case became an element of supreme importance in the determination of the defendant's guilt or innocence. The defendant's explanation would exonerate him from guilt and in the existing state of the competent evidence might well have produced at least a reasonable doubt. We might proceed so far as to say that without the written statement in evidence, the proof of the defendant's guilt was famished.
Our examination of the record induces us to conclude that the judgment of conviction should be reversed. Mandate accordingly.