112 N.J. Super. 407 (1970)
271 A.2d 595
DEPARTMENT OF HEALTH, STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CONCRETE SPECIALTIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1970.
Decided December 2, 1970.
*408 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. Stephen Gordon, Deputy Attorney General, argued the cause for appellant (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Samuel D. Bornstein, Deputy Atty. Gen., of counsel and on the brief).
*409 Mr. Kenneth F. Kunzman argued the cause for respondent (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys).
PER CURIAM.
Plaintiff Department of Health (Department) appeals from a judgment dismissing its complaint wherein it sought the recovery of a statutory penalty for $2500 against the defendant for discharging polluting smoke into the air.
N.J.S.A. 26:2C-8 provides, in part, that the Department is empowered to "formulate and promulgate, amend and repeal codes and rules and regulations preventing, controlling and prohibiting air pollution throughout the State * * *." Pursuant to that authorization the Department promulgated a series of administrative regulations effective January 1, 1958, entitled New Jersey Air Pollution Control Code (Code). Chapter 4, § 2.1 of the Code provides that:
No person shall cause, suffer, allow or permit smoke from any fuel burning equipment, the shade or appearance of which is darker than No. 2 of the Ringelmann Smoke Chart, to be emitted into the open air.
There are three exceptions to that provision, none of which applies to the instant situation.
The Department is empowered to enforce the provisions of this Code in a summary manner by way of injunctive relief and the recovery of a penalty of not more than $2500. N.J.S.A. 26:2C-19. In the instant situation the Department sought no injunctive relief but, as already noted, merely the recovery of a civil penalty.
The facts are basically uncontested. Defendant manufactures concrete block at its premises in Lyndhurst. On March 6, 1964 the Department entered an order directing defendant to cease emitting smoke into the open air from fuel-burning equipment, the shade or appearance of which is darker than No. 2 of the Ringelmann Smoke Chart. The order was served upon defendant in April 1964.
*410 On January 28, 1969 a public health engineer employed by the Department, while driving by defendant's plant, observed for one-half hour defendant's stack emitting smoke darker than No. 2 of the Ringelmann Chart. He thereupon entered the plant and conferred with the foreman who, after observing the smoke with the Department's inspector, went inside and made an adjustment to the oil flow which brought the smoke down to permitted levels. The foreman indicated that there was a malfunction of the internal wiring that operates the oil heater which caused the polluting smoke. He further explained that the system was in process of being repaired at the time the Department's inspector made his observation.
The trial court found that the emission of the smoke was an "isolated occurrence" and concluded that the Department had failed to establish defendant's guilt by a preponderance of the evidence.
On this appeal defendant argues that under the stated circumstances it did not cause, suffer, allow or permit smoke darker than the No. 2 on the Ringelmann Smoke Chart to be emitted into the open air. Initially, we observe that the boiler could have been shut down while repairs were being made, thereby eliminating or at least substantially diminishing the emission of black smoke. This precaution was not taken because it would have adversely affected defendant's product quality.
More importantly, the "isolated occurrence" is concededly not within the permissible exceptions in § 2.1 of the Code. Assuming defendant may not have willfully violated the Code, the fact remains that it did allow and permit the emission of the offensive smoke. The Legislature has decreed in no uncertain terms that air pollution is to be stopped and if necessary to achieve that goal, injunctive relief may be granted or a penalty imposed or both. N.J.S.A. 26:2C-19.
The 1964 Order served as a warning to defendant to abate smoke pollution. But relief to the Department is *411 not necessarily predicated upon defendant's violation of that order. The relief may be grounded upon a violation of § 2.1 of the Code. And in this connection intention or willfulness is not an essential ingredient of the offense. Social and economic problems have impelled the adoption of numerous "strict liability" penal statutes. Where the Legislature makes the commission or omission of an act penal regardless of intent, only the doing of the prescribed act need be shown. State v. Kinsley, 103 N.J. Super. 190 (Cty. Ct. 1968), aff'd o.b., 105 N.J. Super. 347 (App. Div. 1969). In civil proceedings to recover a statutory penalty, the State satisfies the burden of proof placed upon it if it establishes defendant's violation by a preponderance of the evidence. Dept. of Conservation and Economic Development v. Scipio, 88 N.J. Super. 315 (App. Div. 1965), certif. den. 45 N.J. 598 (1965). We view the Air Pollution Control Act, N.J.S.A. 26:2C-1 et seq., in this vein and accordingly find that defendant violated § 2.1 of the Code as charged.
The extent of the penalty is, of course, discretionary with the court. The number of violations, their frequency, the precautions taken to prevent further mishaps, and the circumstances under which the offense occurred are all relevant factors in determining the penalty.
We are of the view that under the circumstances here presented we should exercise such original jurisdiction as is necessary to the complete determination of the matter. R. 2:10-5. A penalty of $200 will be assessed against defendant, payment of which is suspended conditioned upon defendant's compliance with the provisions of the Code.
Reversed.