892 A.2d 1240

LIBERTY MUTUAL INSURANCE COMPANY, PLAINTIFF–APPEL-
LANT, v. ROSE LAND AND FRANK LAND, DEFENDANTS,
AND STEVEN BUDGE, DEFENDANT-RESPONDENT.

Argued October 24, 2005—Decided March 14, 2006.

*Mauro C. Casci,* argued the cause for appellant (*Mr. Casci,* attorney; *Russell Macnow,* on the brief).

*Steven A. Budge,* argued the cause for respondent, pro se.

*John C. Grady,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Mr. Grady* and *Jeffrey R. Caccese,* Deputy Attorney General, on the brief).

*Robert B. Hille,* argued the cause for amicus curiae New Jersey State Bar Association (*Stuart A. Hoberman,* President and *Mr. Hille,* attorneys; *Mr. Hoberman,* of counsel; *Mr. Hille, Mr. Hoberman, James A. McFaul* and *Megan M. Roberts,* on the brief).

Justice ZAZZALI delivered the opinion of the Court.

In this appeal, we must determine the appropriate standard of proof under the Insurance Fraud Prevention Act (IFPA), *N.J.S.A.* 17:33A–1 to –30. In December 2000, a tree fell onto the cabin of defendants Rose and Frank Land. Following the accident, the Lands and co-defendant Steven Budge, who is the Lands' nephew and a licensed public adjuster, submitted a claim of loss to plaintiff Liberty Mutual Insurance Company (Liberty Mutual). Based on evidence suggesting fraudulent activity on the part of defendants, including a videotape depicting Budge and two other men repeatedly slamming a 600–pound portion of the fallen tree against the cabin's roof, Liberty Mutual filed suit against defendants asserting IFPA violations. At the conclusion of trial, a jury ruled

in favor of Liberty Mutual, concluding that it had proven its claims by clear and convincing evidence. Defendants appealed, and Liberty Mutual cross-appealed, asserting that the trial court should have applied a preponderance of the evidence standard. The Appellate Division reversed and remanded for a new trial, finding that Liberty Mutual's counsel committed prejudicial errors. The panel, however, agreed with the trial court that IFPA violations must be proven by clear and convincing evidence.

We granted Liberty Mutual's petition for certification, limiting our review solely to the proper standard of proof. For the reasons set forth below, we hold that the standard of proof under the Insurance Fraud Prevention Act is a preponderance of the evidence.

## I.

Rose Land owns a small cabin at 32 Cohocton Road in Highland Lakes that she and her husband Frank use as a vacation home. At the time that the dispute arose, Liberty Mutual insured the cabin for property damage. On the morning of December 12, 2000, a tree located on the property of Joseph Rizzo, the Lands' next-door neighbor at 30 Cohocton Road, fell onto the roof of the Lands' cabin. After Rizzo personally informed Frank Land of the accident, Land telephoned his nephew, Steven Budge, a licensed public adjuster in the State of New Jersey, to assess the damage and secure the structure. In addition to informing Land, Rizzo also called his insurance company, which sent an agent to inspect the damage later that day. During the inspection, Rizzo and the insurance representative observed that the tree "significant[ly] damage[d]" a portion of the Lands' roof.

Shortly thereafter, Rizzo's wife informed him that she saw Budge and two other men on the top of the cabin "doing some additional damage." "To protect [him]self" against increased damage claims, Rizzo then videotaped Budge and his associates working on the cabin's roof. The videotape depicts the three men taking a portion of the fallen tree, estimated to be about 600

pounds, and slamming it at least ten times against the roof, creating further damage to the roof and shattering a skylight. The videotape also shows Frank Land on the ground gesturing to Budge and his associates and climbing a ladder to provide a jacket to one of the workers. At trial, Budge explained his conduct on the videotape as "perform[ing] emergency service on the home."

Budge subsequently assisted the Lands in preparing and filing an insurance claim on their behalf with Liberty Mutual for $69,338. In connection with that claim, the Lands and Budge agreed that, if there was a recovery, Budge would receive fifteen percent of the insurance settlement proceeds. At Liberty Mutual's request, the Lands submitted four separate proofs of loss. Each proof of loss was submitted on Budge's letterhead, bore his signature, and included a provision in which the insured swore that there was no attempt to deceive Liberty Mutual. Rose Land and her husband also appeared for an examination under oath as part of the claims process.

Anne Hamtil, Liberty Mutual's insurance adjuster, and Joseph Balinski, a builder employed by the company, inspected the cabin ten days after the incident. Based on that inspection, Balinski prepared a damage estimate for the December 2000 loss, concluding that it would cost only $9,291.23 to make the necessary repairs. At trial, Balinski testified that he had previously prepared a damage estimate in connection with a 1999 insurance claim filed by Rose Land that also involved a tree falling on the cabin. In comparing the two estimates, Balinski found that some of the damage documented in the 1999 claim had not been repaired and was included in the estimate submitted in support of the December 2000 claim. Balinski also stated that, in his opinion, many of the repairs in the 2000 estimate were unnecessary.

Because of the suspect nature of the Lands' claim, Liberty Mutual denied coverage and filed suit against the Lands and Budge, alleging IFPA violations. The Lands counterclaimed against Liberty Mutual seeking to enforce their homeowners' insurance policy claim and asserting that Liberty Mutual acted in

bad faith in denying that claim. Budge also counterclaimed, alleging bad faith on the part of Liberty Mutual. After a six-day trial, the jury returned a verdict in favor of Liberty Mutual, finding that it had proven by clear and convincing evidence that all three defendants "knowingly misrepresented, concealed, or failed to disclose any material fact concerning the property loss." The jury further concluded that Budge "intentionally cause[d] or contribute[d] to the loss." The trial court awarded Liberty Mutual treble damages, counsel fees, and investigative costs totaling $82,412.64 and denied Budge's motion for reconsideration.

Defendants appealed, asserting that the trial court committed prejudicial errors during trial. Liberty Mutual cross-appealed, claiming that the trial court erred in charging the jury that an IFPA violation must be proven by clear and convincing evidence. In an unpublished opinion, the Appellate Division reversed and remanded for a new trial for various reasons, including prejudicial statements made by Liberty Mutual's counsel during summation. The panel also concluded, without analysis, that it was "satisfied that the proper burden of proof [under IFPA] is clear and convincing evidence." We granted certification, limited solely to determining the appropriate standard of proof. 183 *N.J.* 587, 874 *A.*2d 1106 (2005). We also allowed the Attorney General and the New Jersey State Bar Association to participate as amici curiae.

## II.

We commence our analysis with a review of the standards of proof at issue in this appeal. We then look to IFPA's plain language, statutory purpose, and penalties to determine whether the Legislature addressed the question. Finally, we examine prior case law addressing the issue.

## A.

■■■■ The New Jersey Rules of Evidence set forth three standards of proof: a preponderance of the evidence, clear and convincing evidence, and proof beyond a reasonable doubt.

*N.J.R.E.* 101(b)(1). As a general rule, the preponderance of the evidence standard applies in civil actions. *State v. Seven Thousand Dollars,* 136 *N.J.* 223, 238, 642 *A.*2d 967 (1994) ("In civil cases, the standard of proof is a preponderance of evidence."); *see also* 2 *McCormick on Evidence* § 339 (Strong ed., 5th ed. 1999) (stating that, except "in certain exceptional controversies," preponderance of evidence standard typically applies in civil cases); 9 *Wigmore on Evidence* § 2498 (3d ed. 1940) (same). A preponderance of the evidence is also "the usual burden of proof for establishing claims before state agencies in contested administrative adjudications." *In re Polk License Revocation,* 90 *N.J.* 550, 560, 449 *A.*2d 7 (1982).

Under the preponderance standard, "a litigant must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden has not been met." Biunno, *Current N.J. Rules of Evidence,* comment 5a on *N.J.R.E.* 101(b)(1) (2005); *see also McCormick on Evidence, supra,* § 339 ("The most acceptable meaning to be given to the expression, proof by a preponderance, seems to be proof which leads the jury to find that the existence of the contested fact is more probable than its nonexistence."). Application of the preponderance standard reflects a societal judgment that both parties should "share the risk of error in roughly equal fashion." *Addington v. Texas,* 441 *U.S.* 418, 423, 99 *S.Ct.* 1804, 1808, 60 *L.Ed.*2d 323, 329 (1979). The decision to apply any other standard of proof "expresses a preference for one side's interests." *Herman & MacLean v. Huddleston,* 459 *U.S.* 375, 390, 103 *S.Ct.* 683, 691, 74 *L.Ed.*2d 548, 561 (1983).

The second standard, clear and convincing evidence, is a higher standard of proof than proof by a preponderance of the evidence but a lower standard than proof beyond a reasonable doubt. *Aiello v. Knoll Golf Club,* 64 *N.J.Super.* 156, 162, 165 *A.*2d 531 (App.Div.1960). The clear and convincing standard "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re*

*Purrazzella,* 134 *N.J.* 228, 240, 633 *A.*2d 507 (1993) (internal quotation marks and citation omitted). Courts have called for clear and convincing evidence in civil cases when more is at stake than loss of money. *See, e.g., Santosky v. Kramer,* 455 *U.S.* 745, 747–48, 102 *S.Ct.* 1388, 1391–92, 71 *L.Ed.*2d 599, 603 (1982) (termination of parental rights); *Addington, supra,* 441 *U.S.* at 433, 99 *S.Ct.* at 1813, 60 *L.Ed.*2d at 335 (involuntary civil commitment to mental hospital); *Woodby v. INS,* 385 *U.S.* 276, 277, 87 *S.Ct.* 483, 484, 17 *L.Ed.*2d 362, 364 (1966) (deportation); *Chaunt v. United States,* 364 *U.S.* 350, 353, 81 *S.Ct.* 147, 149, 5 *L.Ed.*2d 120, 123 (1960) (denaturalization). In such cases, "the threatened loss resulting from civil proceedings is comparable to the consequences of a criminal proceeding in the sense that it takes away liberty or permanently deprives individuals of interests that are ·clearly fundamental or significant to personal welfare." *Polk, supra,* 90 *N.J.* at 563, 449 *A.*2d 7.

This Court also applies a heightened standard of proof in cases in which evidentiary matters are intrinsically complex or prone to abuse. *See, e.g., Morton v. 4 Orchard· Land Trust,* 180 *N.J.* 118, 129–30, 849 *A.*2d 164 (2004) (oral agreements implicating interests in land); *Haynes v. First Nat'l Bank of New Jersey,* 87 *N.J.* 163, 182–83, 432 *A.*2d 890 (1981) (undue influence on testator). Clear and convincing evidence is necessary because those cases "involve circumstances or issues that are so unusual or difficult, that proof by a lower standard will not serve to generate confidence in the ultimate factual determination." *Polk, supra,* 90 *N.J.* at 568, 449 *A.*2d 7. Finally, the highest standard, proof beyond a reasonable doubt, is primarily applied in criminal cases. Biunno, *supra,* comment 7 on *N.J.R.E.* 101(b)(1).

## B.

With those considerations in mind, we first examine the plain language of the statute and its legislative history. Because both the language of the statute and its legislative history are silent concerning the applicable standard of proof, we attempt to discern

the Legislature's intent. *Burns v. Belafsky*, 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001) ("When a statute is silent or ambiguous ... the Court must interpret the statute in light of the Legislature's intent." (internal quotation marks and citation omitted)). To do so, we begin by considering the Legislature's purpose in promulgating the Act. *State v. Tischio*, 107 *N.J.* 504, 511, 527 *A.*2d 388 (1987), *appeal dismissed*, 484 *U.S.* 1038, 108 *S.Ct.* 768, 98 *L.Ed.*2d 855 (1988). We then review the violations and penalties prescribed by the Act to gain further insight into the standard of proof the Legislature intended to apply. *See Merin v. Maglaki*, 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992) ("The Court fulfills its role by construing a statute in a fashion consistent with the statutory context in which it appears.").[1]

The Legislature's stated purpose in enacting IFPA was

---

[1] The dissent seeks to establish a bright-line rule that this Court must prescribe an evidentiary standard of proof when a statute does not set one forth, rather than seek to discern the Legislature's intent. *Post* at 183–84, 892 *A.*2d at 1252. We do not disagree that it is the province of this Court to determine the evidentiary standard in this matter. In so doing, however, courts often look to legislative intent. *See, e.g., Grogan v. Garner*, 498 *U.S.* 279, 286, 111 *S.Ct.* 654, 659, 112 *L.Ed.*2d 755, 764 (1991) (beginning inquiry into appropriate standard of proof under 11 *U.S.C.* § 523 by examining legislative intent); *Carlson & Erickson Builders v. Lampert Yards*, 190 *Wis.*2d 650, 529 *N.W.*2d 905, 908 (1995) ("The statute is silent about the burden of proof in antitrust cases.... We must therefore look to other indicia of legislative intent."); *People ex rel. Allstate Ins. Co. v. Muhyeldin*, 112 *Cal.App.*4th 604, 5 *Cal.Rptr.*3d 492, 496 (2003) (discussing legislative intent concerning appropriate standard of proof under California Insurance Frauds Prevention Act, *Cal. Ins.Code* § 1871.7); *Gennari v. Weichert Co. Realtors*, 288 *N.J.Super.* 504, 541, 672 *A.*2d 1190 (App.Div.1996), *aff'd*, 148 *N.J.* 582, 691 *A.*2d 350 (1997) (discussing legislative intent concerning appropriate standard of proof under New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –20).

Our analysis is not limited to an either/or approach. We do not interpret the Legislature's intent in a vacuum without exercising judgment and applying interpretive rules. Nor do we impose our view on the matter without regard to the drafter's design. In that process, we undertake reasonable efforts to determine what the Legislature intended. That is what we have done in this appeal. Accordingly, even though a statute may not speak directly to the issue, canons of construction, common sense, and public policy enable us to determine probable legislative intent.

to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims.

[*N.J.S.A.* 17:33A–2.]

As Justice Garibaldi acknowledged in 1992, "[i]nsurance fraud is a problem of massive proportions that currently results in substantial and unnecessary costs to the general public in the form of increased rates." *Merin, supra,* 126 *N.J.* at 436, 599 *A.*2d 1256. As such, "the Act is a comprehensive statute designed to help remedy high insurance premiums which the Legislature deemed to be a significant problem." *State v. Sailor,* 355 *N.J.Super.* 315, 319, 810 *A.*2d 564 (App.Div.2001).

To that end, IFPA interdicts a broad range of fraudulent conduct. For example, a "person or practitioner" violates the Act if he or she

[p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy ... knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim.

[*N.J.S.A.* 17:33A–4(a)(1).]

Other violations of the Act include but are not limited to concealing or knowingly failing to disclose information concerning a person's initial or continued right or entitlement to a benefit, *N.J.S.A.* 17:33A–4(a)(3); presenting any knowingly false or misleading statement in an insurance application, *N.J.S.A.* 17:33A–4(a)(4)(b); or knowingly assisting, conspiring with, or urging any person or practitioner to violate any of the Act's provisions, *N.J.S.A.* 17:33A–4(a)(5)(b).

To deter and punish such violations, the Legislature created a number of enforcement mechanisms and penalties. First, *N.J.S.A.* 17:33A–5a(1) authorizes the Commissioner of the Department of Banking and Insurance to bring a civil action seeking monetary penalties. Those penalties range from "not more than $5,000 for the first violation, $10,000 for the second violation, and $15,000 for each subsequent violation," plus court costs and rea-

sonable attorneys' fees. *N.J.S.A.* 17:33A–5b. Alternatively, IFPA authorizes the Commissioner to levy identical civil administrative penalties. *N.J.S.A.* 17:33A–5c. A party assessed with administrative penalties is entitled to seek a hearing. *N.J.S.A.* 17:33A–5c. After a hearing and upon a finding that a violation occurred, the Commissioner may impose the statutory penalties as well as attorneys' fees and the costs of prosecution. *N.J.S.A.* 17:33A–5c. The Commissioner also may order the payment of restitution to any insurance company or person who has suffered a loss as a result of an IFPA violation. *N.J.S.A.* 17:33A–5c.

The Act further allows any insurance company that has been damaged as a result of a statutory violation to bring a civil action to recover compensatory damages, including reasonable investigation costs and attorneys' fees. *N.J.S.A.* 17:33A–7a. A successful insurance company shall recover treble damages if the court determines that the defendant engaged in a pattern of violations under the Act. *N.J.S.A.* 17:33A–7b. In addition, the Act permits the Commissioner to join in such an action to recover civil penalties. *N.J.S.A.* 17:33A–7d. "If the commissioner prevails, the court may also award court costs and reasonable attorney[s'] fees actually incurred by the commissioner." *N.J.S.A.* 17:33A–7d. Finally, any person who is found to have committed insurance fraud must pay a $1,000 surcharge. *N.J.S.A.* 17:33A–5.1. And, in the context of automobile insurance fraud—a context not present here, *see* note 4, *infra*, 186 *N.J.* at 180, 892 *A.2d* at 1250, —a violator of IFPA is subject to a mandatory one-year loss of driving privileges. *N.J.S.A.* 39:6A–15.

■ In reviewing IFPA's statutory sanctions, this Court has held that "the civil penalties authorized by the Act are remedial in nature," *Merin, supra*, 126 *N.J.* at 432–33, 599 *A.2d* 1256, and serve to "compensate the State for the costs incurred as a result of investigating and prosecuting insurance fraud," *id.* at 445, 599 *A.2d* 1256. Consequently, we must construe the Act's provisions liberally to accomplish the Legislature's broad remedial goals. *See, e.g., Young v. Schering Corp.*, 141 *N.J.* 16, 25, 660 *A.2d* 1153

(1995) ("Where the Legislature's intent is remedial, a court should construe a statute liberally.").

### C.

The only reported decision addressing the standard of proof that a litigant must satisfy to establish a violation of IFPA is *Harleysville Insurance Co. v. Diamond*, 359 *N.J.Super.* 34, 818 *A.2d* 354 (Law Div.2002). In that case, the Law Division held that a party seeking relief under the Act must "satisfy the burden of proof by clear and convincing evidence." *Id.* at 40, 818 *A.2d* 354. The court relied almost exclusively on the fact that the clear and convincing standard applies in common law fraud actions. *Id.* at 38–39, 818 *A.2d* 354. Defendants and amicus curiae, the New Jersey State Bar Association, assert that this Court should follow the reasoning espoused in *Harleysville,* claiming that "no material distinctions are noted between IFPA and [common law] fraud." In contrast, Liberty Mutual maintains that *Harleysville* was wrongly decided because common law fraud is distinguishable from statutory fraud.[2]

We agree with Liberty Mutual that the standard of proof for common law fraud does not necessarily apply under IFPA. As noted by the United States Supreme Court in *Huddleston, supra,* comparing statutory fraud to common law fraud "can be misleading." 459 *U.S.* at 388, 103 *S.Ct.* at 690, 74 *L.Ed.2d* at 559. In this matter, the Legislature in enacting IFPA did not codify common law fraud but rather supplemented that action because, standing alone, it had proven to be insufficient in combating and deterring insurance fraud. *See N.J.S.A.* 17:33A–2 (enacting IFPA "to confront aggressively the problem of insurance fraud in New Jersey"). In furtherance of that purpose, the Act requires plaintiffs alleging IFPA violations to prove fewer elements than required

---

[2] The author of *Harleysville* has since expressed a different view in two subsequent unpublished opinions, and has concluded, as we do here, that the proper standard of proof under IFPA is a preponderance of the evidence, not clear and convincing evidence.

for common law fraud. Indeed, proof of common law fraud requires the satisfaction of five elements: a material misrepresentation by the defendant of a presently existing fact or past fact; knowledge or belief by the defendant of its falsity; an intent that the plaintiff rely on the statement; reasonable reliance by the plaintiff; and resulting damages to the plaintiff. *Gennari, supra,* 148 *N.J.* at 610, 691 *A.*2d 350.

In contrast, the statutory language of IFPA does not require proof of reliance on a false statement or resultant damages. *See Merin, supra,* 126 *N.J.* at 445, 599 *A.*2d 1256 ("Nor do we find decisive the fact that [the defendant] was not successful in securing insurance proceeds. The penalties permitted by the Act are not designed to remedy direct monetary damage to the insurer."); *Sailor, supra,* 355 *N.J.Super.* at 324, 810 *A.*2d 564 (stating that under IFPA "the State is not seeking damages, as in a common law fraud action, but rather is seeking a statutory penalty designed to reduce the incidence of insurance fraud"). Because of those distinctions, we find that the standard of proof applied in a common law fraud case is not dispositive of the standard of proof applicable under IFPA.

### III.

Although reference to IFPA's statutory language and prior case law does not resolve the issue, a review of analogous fraud statutes, rules of statutory construction, and related considerations persuade us that the proper standard of proof is a preponderance of the evidence.

### A.

For assistance in interpreting the statute in question, we review the standard of proof applied under similar statutes. By referring to similar legislation, "the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and harmonious system of law." Norman J. Singer, 2B

*Sutherland Statutory Construction* § 53:03, at 328–29 (6th ed. 2000).

The closest statutory analogue to IFPA in New Jersey is the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –20, which also is remedial legislation that warrants liberal construction. *Lettenmaier v. Lube Connection, Inc.,* 162 *N.J.* 134, 139, 741 *A.*2d 591 (1999). Like IFPA, the CFA provides that "[i]n any action . . . the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest." *N.J.S.A.* 56:8–19. The statute further provides for the award of "reasonable attorneys' fees, filing fees and reasonable costs of suit." *N.J.S.A.* 56:8–19. As we have explained, those provisions serve "to compensate the victim for his or her actual loss; to punish the wrongdoer through the award of treble damages; and by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud." *Lettenmaier, supra,* 162 *N.J.* at 139, 741 *A.*2d 591 (internal citation omitted). In discussing the requisite standard of proof under the CFA, the Appellate Division has stated: "We find no indication that the Legislature intended to impose any greater burden of proof [under the CFA] than that usually required in a civil action." *Gennari, supra,* 288 *N.J.Super.* at 541, 672 *A.*2d 1190; *see also Hyland v. Aquarian Age 2,000, Inc.,* 148 *N.J.Super.* 186, 191, 372 *A.*2d 370 (Ch.Div.1977) ("[S]ince [the CFA] is a civil action, preponderance of the evidence, the usual civil standard of proof, should be the applicable standard.").

The federal statutory counterpart to IFPA, the False Claims Act (FCA), 31 *U.S.C.* § 3729(a)(2), similarly requires proof by a preponderance of the evidence. 31 *U.S.C.* § 3731(c). As with IFPA, the FCA provides for civil penalties, and in some cases treble damages, against "any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 *U.S.C.* § 3729(a)(2). Although the federal courts initially held that the standard in such actions was that of clear and convincing

evidence, *see, e.g., United States v. Ekelman & Associates Inc.,* 532 *F.*2d 545, 548 (6th Cir.1976), Congress overruled that line of cases in 1986 by amending the FCA to require only the preponderance standard, 31 *U.S.C.* § 3731(c). The preponderance standard also applies in civil and administrative proceedings to enforce the anti-fraud provisions of the federal securities laws. *Huddleston, supra,* 459 *U.S.* at 388–90, 103 *S.Ct.* at 691, 74 *L.Ed.*2d at 560 (§ 10(b) of Securities Act of 1934); *Steadman v. SEC,* 450 *U.S.* 91, 102, 101 *S.Ct.* 999, 1008, 67 *L.Ed.*2d 69, 79, *reh. denied,* 451 *U.S.* 933, 101 *S.Ct.* 2008, 68 *L. Ed.*2d 318 (1981) (§ 9(b) of Investment Company Act of 1940); *SEC v. C.M. Joiner Leasing Corp.,* 320 *U.S.* 344, 355, 64 *S.Ct.* 120, 125, 88 *L.Ed.* 88, 95 (1943) (§ 17(a) of Securities Act of 1933).

## B.

Additional considerations reinforce our conclusion that application of the preponderance standard is both sensible and fair. Although not fraud statutes, we find it persuasive that the preponderance standard is applied to violations of other statutes in New Jersey that provide for substantial monetary penalties. We routinely require a preponderance of the evidence in civil proceedings in which the Attorney General seeks to enforce the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 to –42, which prescribes penalties ranging from $10,000 to $50,000 for violations of the Act. *See Shepherd v. Hunterdon Developmental Ctr.,* 174 *N.J.* 1, 24, 803 *A.*2d 611 (2002). Our courts also use the preponderance standard in civil proceedings brought by the State to recover a statutory penalty. *See, e.g., Department of Health v. Concrete Specialties, Inc.,* 112 *N.J.Super.* 407, 411, 271 *A.*2d 595 (App.Div. 1970).

Moreover, a requirement that IFPA violations must be proven by clear and convincing evidence may lead to inconsistent results. Under our common law, courts have long held that when an insurance company is defending against payment of an insurance claim that it deems to be fraudulent, the company need only prove

the affirmative defenses of arson and that of fraud and false swearing by a preponderance of the evidence. *Italian Fisherman v. Commercial Union Assurance Co.*, 215 *N.J.Super.* 278, 282, 521 *A.*2d 912 (App.Div.), *certif. denied,* 107 *N.J.* 152, 526 *A.*2d 211 (1987). As the Attorney General argues, it is doubtful that the Legislature envisioned that an affirmative defense of fraud would be governed by a preponderance of the evidence but that a counterclaim based on the same fraudulent conduct would require a heightened standard of proof. *See State v. Lewis,* 185 *N.J.* 363, 369, 886 *A.*2d 643 (2005) ("[A] court should strive to avoid statutory interpretations that lead to absurd or unreasonable results.") (internal quotation marks and citation omitted).

Finally, we note that the Legislature is well aware of its ability to impose a higher standard of proof when it so desires. *See, e.g., N.J.S.A.* 2A:15–5.12 (requiring plaintiffs to prove punitive damages by clear and convincing evidence). As this Court stated in discussing the standard of proof applied in agency adjudications under the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to – 24:

> Given the long history of the preponderance standard, together with the total lack of any indication in the language of the statute or in its legislative history of an intent to alter that standard, it is reasonable to infer that the Legislature was content to continue the "traditional preponderance-of-the-evidence standard" . . . . [*Polk, supra,* 90 *N.J.* at 561 n. 1, 449 *A.*2d 7 (quoting *Steadman, supra,* 450 *U.S.* at 102, 101 *S.Ct.* at 1008, 67 *L.Ed.*2d at 79).]

*See also Grogan, supra,* 498 *U.S.* at 286, 111 *S.Ct.* at 659, 112 *L.Ed.*2d at 764 (noting that congressional silence on standard of proof issue is "inconsistent with the view that Congress intended to require a special, heightened standard of proof"); *State by Humphrey v. Alpine Air Prods., Inc.,* 500 *N.W.*2d 788, 790 (Minn.1993) ("When the legislature says nothing about the standard of proof to be used, this is regarded as a signal that the legislature intended the preponderance of the evidence standard."); *Allstate Ins. Co., supra,* 5 *Cal.Rptr.*3d at 496 ("Clearly, if the Legislature had wished to impose [a] higher evidentiary standard on an action to recover damages under [the California Insurance Frauds Prevention Act], it would have so stated."). We

therefore decline to interpret the Legislature's silence as an indication that it intended to depart from the customary standard of proof in civil cases. Rather, the more reasonable conclusion is that absence of an evidentiary standard indicates that a preponderance of the evidence—the traditional, default standard—applies.

## C.

■ Despite substantial authority to the contrary, the dissent argues that the combination of treble damages and attorneys' fees warrants application of clear and convincing evidence. Although we do not minimize the effect that such monetary sanctions can have on a defendant, civil proceedings ordinarily do involve the risk of monetary damages. Indeed, the damages sought in certain civil actions may exceed the penalties prescribed by IFPA. As such, we are not persuaded that the presence of a treble damages or counsel fees provision mandates proof by clear and convincing evidence. As explained above, a preponderance of the evidence is applied to proceedings under the CFA, which, like IFPA, provides for the recovery of both types of sanctions. *See Gennari, supra,* 288 *N.J.Super.* at 541, 672 *A.2d* 1190. The federal FCA also allows for treble damages and yet applies a preponderance standard. 31 *U.S.C.* § 3731(c).[3]

Moreover, research reveals that the United States Supreme Court has rejected application of the clear and convincing standard to civil anti-trust actions for treble damages. *Ramsey v. United Mine Workers,* 401 *U.S.* 302, 311, 91 *S.Ct.* 658, 664, 28 *L.Ed.*2d 64, 71 (1971). Courts also have held that proof by a preponderance of the evidence is sufficient for an award of treble

---

[3] The dissent *submits that* "[n]ot until today has this Court suggested that the burden of proof in cases prosecuted under the Consumer Fraud Act is by a preponderance of evidence." *Post* at 174 n. 2, 892 *A.2d* at 1246 n. 2. However, in the years since the Appellate Division's ruling in *Gennari, supra,* 288 *N.J.Super.* at 541, 672 *A.2d* 1190, this Court has never questioned application of the preponderance standard to CFA violations.

damages under both federal and state Racketeer Influenced and Corrupt Organizations (RICO) statutes. *See, e.g., Fleischhauer v. Feltner,* 879 *F.*2d 1290, 1296 (6th Cir.1989); *Liquid Air Corp. v. Rogers,* 834 *F.*2d 1297, 1303 (7th Cir.1987); *Williams Gen. Corp. v. Stone,* 279 *Ga.* 428, 614 *S.E.*2d 758, 761 (2005). In addition, courts in other jurisdictions have rejected application of clear and convincing evidence to statutory provisions with treble damages. *See, e.g., Farmers Group, Inc. v. Williams,* 805 *P.*2d 419, 427 (Colo. 1991) (applying preponderance of evidence standard to treble damages provision under Colorado No Fault Act, *Colo.Rev.Stat.* § 10–4–708(1)); *Carlson & Erickson Builders, supra,* 529 *N.W.*2d at 912 (applying preponderance of evidence standard to treble damages provision under Wisconsin anti-trust laws); *Rorrer v. P.J. Club, Inc.,* 347 *S.C.* 560, 556 *S.E.*2d 726, 731 (Ct.App.2001) (applying preponderance of evidence standard to treble damages provision under *S.C.Code Ann.* § 32–1–20). Although the dissent labels the penalties imposable under IFPA as "severe," *post* at 184–85, 892 *A.*2d at 1253, it fails to recognize that the application of the clear and convincing evidence standard typically is reserved for the protection of "particularly important individual interests" that are "more substantial than mere loss of money." *Addington, supra,* 441 *U.S.* at 424, 99 *S.Ct.* at 1808, 60 *L.Ed.*2d at 330.[4]

## IV.

We reverse the Appellate Division on the evidentiary issue in this appeal and hold that the standard of proof under the New Jersey Insurance Fraud Prevention Act is a preponderance of the evidence. To the extent that the Law Division reached a contrary holding in *Harleysville,* we overrule that decision. The matter is

---

[4] We recognize that, in the context of automobile insurance fraud, the loss of driving privileges under *N.J.S.A.* 39:6A–15 might implicate such interests. As a result, in a case involving automobile insurance fraud, there may be a question concerning the standard of proof. That question, however, is not before the Court. None of the defendants in this appeal face a suspension of driving privileges, nor have they briefed that issue.

reversed in part and remanded to the trial court for further proceedings consistent with this opinion.

Justice ALBIN, dissenting.

The majority has determined that the lowest burden of proof—the preponderance of evidence standard—should apply in cases prosecuted by insurance companies under the Insurance Fraud Prevention Act (IFPA), *N.J.S.A.* 17:33A–1 to –30, despite the lack of any language in the IFPA that suggests such a standard. The majority divines that standard by unnecessarily and vainly searching for a legislative intent when, apparently, the Legislature did not give a second thought to the subject. "Because both the language of the statute and its legislative history are silent concerning the applicable standard of proof" in cases prosecuted under the IFPA, *ante* at 170, 892 *A.*2d at 1244, this Court has not only the constitutional and equitable power, but the duty to set the standard. A defendant who is found liable under the IFPA is subject to compensatory damages, treble damages, mandatory assessment of investigation expenses, attorneys' fees and costs, and, if the case involves automobile insurance fraud, a mandatory one-year driver's license suspension. Those penalties in their totality are more than the equivalent of punitive damages, which by statute must be proved by clear and convincing evidence. The significant consequences that flow from a judicial determination of IFPA liability should warrant a heightened degree of accuracy. The preponderance of evidence standard sets the bar too low. There is no sound reason why insurance companies should not bear the burden of proving an IFPA violation by clear and convincing evidence. I therefore respectfully dissent.

I.

When the Legislature has enacted a law that requires factfinding but has not expressed a preference for a particular burden of proof, our courts have not hesitated to establish the required burden by looking to other statutes and decisional law, rather than

engaging in the enigmatic search for legislative intent. *Watkins v. Nelson*, 163 *N.J.* 235, 244, 748 *A.*2d 558 (2000) ("Because the [child-custody] statute does not provide a standard [of proof], we must look to our statutory and decisional law concerning custody to decipher the appropriate standard to be applied in this case."). *See, e.g., N.J. Div. of Youth & Family Servs. v. V.K.*, 236 *N.J.Super.* 243, 261–62, 565 *A.*2d 706 (App.Div.1989) (applying clear and convincing standard to parental-rights termination under *N.J.S.A.* 30:4C–20), *certif. denied*, 121 *N.J.* 614, 583 *A.*2d 315 (1990); *State v. Cestone*, 38 *N.J.Super.* 139, 142-43, 147–48, 118 *A.*2d 416 (App.Div.1955) (applying "beyond a reasonable doubt" standard to violation of motor vehicle statute prohibiting crossing center line, currently codified at *N.J.S.A.* 39:4–86); *State v. Kinsley*, 103 *N.J.Super.* 190, 191–92, 246 *A.*2d 764 (Cty.Ct.1968) (holding that preponderance of evidence was proper standard under environmental protection statute, *N.J.S.A.* 23:5–28), *aff'd o.b.*, 105 *N.J.Super.* 347, 252 *A.*2d 224 (App.Div.1969) (per curiam).

Courts in other jurisdictions also determine the appropriate burden of proof to apply to a statutory scheme when the legislature has not spoken on the subject. *See, e.g., County Attorney v. Kaplan*, 124 *Ariz.* 510, 605 *P.*2d 912, 913 (Ct.App.1980) (applying clear and convincing standard to provision in mental health statute defining "gravely disabled"); *Swanson v. State*, 83 *Idaho* 126, 358 *P.*2d 387, 391 (1960) (applying "clear and satisfactory" standard under adverse possession statute); *In re Welfare of Rosenbloom*, 266 *N.W.*2d 888, 889–90 (Minn.1978) (per curiam) (imposing clear and convincing standard to termination of parental rights in face of statutory silence on burden of proof).

The judicial power to fashion and allocate evidentiary burdens of proof is a familiar one and is derived from this Court's constitutional rule-making authority over the practice and procedure of our courts.[1] *See N.J. Const.* art. VI, § 2, ¶ 3. It is a power

---

[1] The imposition of a heightened standard of proof in certain civil cases also derives from courts' equitable powers. *See McCormick on Evidence* § 340 & n. 15 (Strong ed., 5th ed. 1999).

that is routinely exercised. *See, e.g., Haynes v. First Nat'l State Bank of N.J.,* 87 *N.J.* 163, 182, 432 *A.*2d 890 (1981) (requiring clear and convincing evidence to rebut presumption of undue influence in respect of will); *State v. Hurd,* 86 *N.J.* 525, 546, 432 *A.*2d 86 (1981) (setting standard of clear and convincing evidence for admission of hypnotically refreshed testimony); *State ex rel. B.F.,* 230 *N.J.Super.* 153, 158–59, 553 *A.*2d 40 (App.Div.1989) (setting standards of proof for admissibility of closed-circuit-television testimony in certain criminal prosecutions under *N.J.S.A.* 2A:84A-32.4).

That is not to say that the Legislature cannot create a civil cause of action and assign a burden of proof to the prosecution of the matter. Many civil statutes specifically provide for the standard of proof that must be met by the plaintiff. *See, e.g., N.J.S.A.* 2A:15–5.12(a) (requiring clear and convincing evidence for award of punitive damages); *N.J.S.A.* 2A:81–2 (requiring clear and convincing evidence under dead man's statute); *N.J.S.A.* 3B:3–15(b) (requiring clear and convincing evidence to revive revoked will); *N.J.S.A.* 25:1–13(b) (requiring clear and convincing evidence under statute of frauds); *N.J.S.A.* 37:2–38 (requiring clear and convincing evidence before setting aside premarital agreement). We only interfere with a legislative determination concerning the burden of proof if the burden established by the Legislature does not satisfy principles of due process. *See, e.g., State v. Cummings,* 184 *N.J.* 84, 95–96, 875 *A.*2d 906 (2005) (holding that violation under civil breathalyzer refusal statute was quasi-criminal in nature and therefore due process required proof beyond reasonable doubt, not merely preponderance of evidence as provided by statute).

Thus, ordinarily we would defer to an expression of legislative authority in the spirit of comity and out of respect for a coequal branch of government. *See In re Civil Commitment of G.G.N.,* 372 *N.J.Super.* 42, 46, 855 *A.*2d 569 (App.Div.2004) (finding "no basis to alter the burden of proof from that which is set out in the statute and which was approved by our Supreme Court"). But when the Legislature has not spoken to the subject, as in this

case, we can as readily conclude that it expected the courts, which have the experience and expertise, to set the appropriate burden of proof. In the absence of a legislative directive enunciating the burden of persuasion to be applied to a statutorily created cause of action, I see no need for this Court to ascribe to the Legislature an imaginary intention. Nothing in the text or history of the IFPA intimates that the Legislature gave any thought to the burden of proof that should apply to the prosecution of matters arising under the Act. Accordingly, this Court should exercise its constitutional and equitable powers and determine the burden of proof that applies to IFPA cases.

## II.

In determining the appropriate burden of proof, the Court must look at the consequences that follow from a finding of liability. Our system of justice is imperfect and erroneous judgments are inevitable. The burden of proof that we set for a plaintiff to meet in proving a cause of action is an expression of the degree of error that we are willing to tolerate in our system of justice. *See Addington v. Texas,* 441 *U.S.* 418, 423, 99 *S.Ct.* 1804, 1808, 60 *L.Ed.*2d 323, 329 (1979) (observing that burdens of proof serve to " 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication' " (quoting *In re Winship,* 397 *U.S.* 358, 370, 90 *S.Ct.* 1068, 1076, 25 *L.Ed.*2d 368, 379 (1970) (Harlan, J., concurring))); *State v. Oliver,* 162 *N.J.* 580, 590, 745 *A.*2d 1165 (2000) (stating same). In criminal cases, where the stakes are the greatest, our judicial system demands a high degree of confidence in a correct outcome, and therefore the burden on the State is to prove guilt beyond a reasonable doubt. *See Addington, supra,* 441 *U.S.* at 423–24, 99 *S.Ct.* at 1808, 60 *L.Ed.*2d at 329; *Winship, supra,* 397 *U.S.* at 369–72, 90 *S.Ct.* at 1075–77, 25 *L.Ed.*2d at 378–81 (Harlan, J., concurring).

The stakes in an IFPA case are far greater than in a typical civil case in which compensatory damages are the only form of

relief. Those determined to have violated the IFPA face severe consequences. An "insurance company damaged as the result of a violation of" the IFPA may "recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees." *N.J.S.A.* 17:33A–7(a). In addition, a successful insurance company "shall recover treble damages if the court determines that the defendant has engaged in a pattern of violating [the] act." *N.J.S.A.* 17:33A–7(b). Moreover, if a violation of the act involves automobile insurance fraud, then the violator is subject to a mandatory one-year driver's license suspension. *N.J.S.A.* 39:6A–15.

Treble damages are intended to punish, and only partly to compensate, and therefore have all the hallmarks of punitive damages. *See ante* at 176, 892 *A.*2d at 1247–48 (stating that Consumer Fraud Act's treble damages provision "serve[s] to . . . punish the wrongdoer" (internal quotation marks omitted)); *Furst v. Einstein Moomjy, Inc.*, 182 *N.J.* 1, 12, 860 *A.*2d 435 (2004) ("Among the equitable and legal remedies available against violators of the [Consumer Fraud] Act are treble damages, reasonable attorneys fees, and costs of suit. The purpose of those remedies is not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar fraudulent practices." (citation omitted)); *In re Cohen*, 114 *N.J.* 51, 65, 552 *A.*2d 985 (1989) (alluding to "punitive nature of an award for treble damages"); *see also D.C.Code* § 22–3225.05(b) (providing for mandatory award of treble damages upon clear and convincing showing of "established pattern or practice" of violation of insurance fraud act); *Fla. Stat.* § 772.104 (requiring clear and convincing evidence before award for treble damages in civil action under deceptive practices statute); *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 *S.W.*3d 343, 359–60 (Tenn.Ct.App. 1999) (holding that under trebling statute, treble damages are "automatic" on showing by clear and convincing evidence).

If we are to make statutory comparisons, the closest analogue to the IFPA is the Punitive Damages Act, *N.J.S.A.* 2A:15–5.9 to –

5.17. Under the Punitive Damages Act, the plaintiff must prove by clear and convincing evidence that the defendant acted with actual malice or in willful and wanton disregard of the harm that might be caused to others. *N.J.S.A.* 2A:15–5.12(a). In most cases that fall under that statute, punitive damages are capped at "five times the liability of [the] defendant for compensatory damages or $350,000, whichever is greater." *N.J.S.A.* 2A:15–5.14(b)–(c).

The Punitive Damages Act defines compensatory damages as "damages intended to make good the loss of an injured party, and no more," and punitive damages as damages intended "to penalize and to provide additional deterrence against a defendant to discourage similar conduct in the future." *N.J.S.A.* 2A:15–5.10. By that definition, only one part of a treble damages award covers compensatory damages whereas the other two parts comprise punitive damages. Under the majority's ruling, an insurance company that suffers a $1,000,000 loss will be awarded trebled damages of $3,000,000—$1,000,000 of which is compensatory and $2,000,000 of which is punitive. In such circumstances, the majority opinion allows an insurance company a $2,000,000 punitive damages award by merely satisfying the preponderance of the evidence standard. On the other hand, in a non-IFPA case, a plaintiff must satisfy the clear and convincing evidence standard for the same $2,000,000 punitive damages award under the Punitive Damages Act. Significantly, absent from the treble damages scheme of the IFPA is any mechanism to safeguard a defendant from an excessive award of punitive damages. For example, in determining an award of punitive damages under the Punitive Damages Act, the factfinder must consider "[t]he profitability of the misconduct to the defendant" and "[t]he financial condition of the defendant." *N.J.S.A.* 2A:15–5.12(c)(2), (4). There is no similar provision in the IFPA that allows the factfinder to award trebled damages only proportionate to a defendant's financial means.[2]

---

[2] The Consumer Fraud Act, like the IFPA, subjects violators to court costs, attorneys' fees, and treble damages. *N.J.S.A.* 56:8–19. Not until today has this

For those reasons, it is difficult to imagine that the Legislature would intend a clear and convincing standard for punitive damages, but only a preponderance of the evidence standard for trebled damages, particularly when those damages are on top of requiring the defendant to pay an insurance company's investigation expenses, costs of suit and attorneys' fees, and an automatic one-year suspension of the defendant's driver's license in an automobile insurance fraud case.

In that latter regard, it is important to note that in the prosecution of a Title 39 motor vehicle violation, including those involving potential license suspensions, the State must prove guilt beyond a reasonable doubt. *Cummings, supra,* 184 *N.J.* at 92–93, 98, 875 *A.*2d 906; *State v. Dively,* 92 *N.J.* 573, 576, 577, 585, 458 *A.*2d 502 (1983); *see also Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 295, 277 *A.*2d 216 (1971) (describing "substantial loss of driving privileges" as "serious consequence"). Although the present case does not involve automobile insurance fraud, clearly a heightened standard of proof is required when license suspension is added to the list of penalties that attach to an IFPA violation.

Viewed in their totality, the sanctions available under the IFPA—treble damages, *N.J.S.A.* 17:33A–7(b); mandatory assessment of investigation costs, court costs, and attorneys' fees, *N.J.S.A.* 17:33A–7(a); and mandatory driver's license revocation for automobile insurance fraud, *N.J.S.A.* 39:6A–15—are sufficiently punitive, and involve consequences of sufficient magnitude, to require a burden of proof higher than the typical preponderance standard in civil cases. There is no good reason why insurance companies should not be held to the clear and convincing evidence standard of the Punitive Damages Act, *N.J.S.A.* 2A:15–5.12(a).

---

Court suggested that the burden of proof in cases prosecuted under the Consumer Fraud Act is by a preponderance of evidence. *See ante* at 176–77, 892 *A.*2d at 1248 (citing Superior Court decisions defining burden of proof under Consumer Fraud Act as preponderance of evidence).

## III.

Because I would require insurance companies in IFPA cases to prove liability by the standard of clear and convincing evidence, I respectfully dissent.

Justice LONG joins in this opinion.

*For reversal in part and remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, WALLACE and RIVERA–SOTO—5.

*Dissenting*—Justices LONG and ALBIN—2.