# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3690-21

J.L.A.,

 Plaintiff-Respondent,

v.

C.J.A.,

 Defendant-Appellant.

_____

    Submitted November 29, 2023 – Decided January 4, 2024

    Before Judges Firko and Susswein.

    On appeal from the Superior Court of New Jersey, Family Part, Cape May County, Docket No. FV-05-0554-22.

    Tonacchio, Spina & Compitello, attorneys for appellant (Jeremy Stephen Price and Stephen R. Cappetta, on the brief).

    Respondent has not filed a brief.

PER CURIAM

C.J.A.[1] appeals from the final restraining order (FRO) entered against him on July 19, 2022, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. C.J.A. and J.L.A. are father and son.[2] After convening trial on their mutual requests for FROs, Family Part Judge Joseph A. Levin found C.J.A. committed the predicate act of harassment and further found that an FRO was needed to prevent him from committing future acts of domestic violence. After carefully reviewing the record in light of the applicable legal principles, we affirm.

Because we affirm substantially for the reasons explained in Judge Levin's thoughtful and comprehensive oral opinion, we need only briefly summarize the pertinent facts. J.L.A. testified that during an altercation on June 25, 2022, C.J.A. made threats to burn the house down with his family inside. J.L.A. also testified about a prior incident during which C.J.A. strangled him in the presence of his younger sister.

C.J.A.'s seventeen-year-old daughter testified she called the police because C.J.A. started an argument with her mother regarding mortgage

---

[1] We use initials to protect the privacy and confidentiality of these proceedings. R. 1:38-39(d)(10).

[2] The trial court also granted C.J.A.'s application for an FRO against his son, J.L.A. That decision is not before us in this appeal.

A-3690-21

payments. The daughter testified she was scared that if her mother did not talk, "he would do something to her." She also confirmed her father strangled J.L.A. in the past so that he was unable to breathe.

C.J.A.'s wife testified she did not think C.J.A. made threats on the day in question and that she "was so in a zone of trying to just get him to leave." She testified about past acts of domestic violence, referring to photographs the family has of punched holes in the walls, kicked doors, and blue paint on the wall from a soda pack C.J.A. threw at her. She testified that police had come to the house twice.

C.J.A. testified that on June 25, 2022, because he and his wife were separating, he asked her about the mortgage payments, but she refused to answer his question and claimed she would let him know some other day. He admitted to having a drinking problem in the past. He testified J.L.A. was "out-of-his mind on drugs" when the strangulation incident occurred. He also said his son refuses to take his depression and anxiety medication.

Judge Levin found the parties minimized their conduct, especially with regard to the strangulation incident. The judge nonetheless found J.L.A and his mother were credible witnesses. The judge took note of C.J.A.'s prior drinking problem and a recent incident where he took Xanax, which, C.J.A.

A-3690-21

acknowledged he "took too many" and claimed "it was a mistake." The judge added that C.J.A. did not rebut the prior episode of domestic violence when he threw a twelve pack of soda at his wife.

Judge Levin found by a preponderance of the evidence C.J.A. committed all three types of harassment defined in N.J.S.A. 2C:33-4.[3] The judge also considered the six factors for determining whether an FRO is needed, which are codified in N.J.S.A. 2C:25-29(a)(1) through (6). With respect to the prior history of domestic violence, the judge found:

---

[3] N.J.S.A. 2C:33-4 provides in pertinent part:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he [or she]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> . . . .

A-3690-21

In my fact-finding, there's a lengthy prior history of domestic violence, including physical choking, a grabbing the [c]ourt credited. Threats, rages, things of that nature, so there's extensive prior history whose existence is an immediate danger to [J.L.A.] and the property. It was—the property was threatened to be burned down. There's financial circumstances that are intertwined. It's in the best interest of [J.L.A.] and if you look at all the factors, well over a preponderance of the evidence that there's a need to [issue] . . . a restraining order . . . to prevent future acts of domestic violence.

On appeal C.J.A. contends Judge Levin erred in finding by a preponderance of the evidence that he committed the predicate act of harassment under N.J.S.A. 2C:33-4. Specifically, C.J.A. contends Judge Levin did not properly weigh the testimony and erred in finding he acted with the requisite intent to harass. C.J.A. also contends Judge Levin erred by finding that issuance of an FRO was necessary to protect against future acts of domestic violence.

We begin our analysis by acknowledging the scope of our review is limited. Appellate courts "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). Moreover, "[d]eference is especially appropriate 'when the evidence is largely testimonial

5

and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Accordingly, we will not disturb the factual findings of the trial judge unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C., 463 N.J. Super. at 428 (quoting S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010)).

The PDVA authorizes courts to issue restraining orders "after a finding . . . is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29(a). An FRO may be issued if two criteria are met. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The plaintiff seeking the FRO must prove that (1) "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred," and (2) that the order is necessary to protect the plaintiff from "immediate danger or to prevent further abuse." Id. at 127.

"The plaintiff must prove an act of domestic violence by a preponderance of the evidence." S.D., 415 N.J. Super. at 431 (citing N.J.S.A. 2C:25-29(a)). Under a preponderance standard, "'a litigant must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden

has not been met.'" N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 615 (App. Div. 2010) (quoting Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006)). "The evidence must demonstrate that the offered hypothesis is a rational inference, that it permits the trier[] of fact to arrive at a conclusion grounded in a preponderance of probabilities according to common experience." Ibid. (alteration in original) (quoting In re Estate of Reininger, 388 N.J. Super. 289, 298 (Ch. Div. 2006)).

In Silver, we explained "the commission of any one of the predicate acts enumerated in [the PDVA] does not automatically warrant issuance of a domestic violence restraining order. . . ." 387 N.J. Super. at 124. In R.G. v. R.G., we reaffirmed that principle, explaining "the trial court must find a predicate offense and also find a basis, upon the history of the parties' relationship, to conclude the safety of the victim is threatened and a restraining order is necessary to prevent further danger to person or property." 449 N.J. Super. 208, 224 (App. Div. 2017); see also Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) ("[T]he drafters of the law did not intend that the commission of any one of these acts automatically would warrant the issuance of a domestic violence order.").

7

The second prong of the <u>Silver</u> two-part test "reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which defendant's acts must be evaluated." <u>R.G.</u>, 449 N.J. Super. at 229 (citing <u>Corrente</u>, 281 N.J. Super. at 248).

Applying these guiding principles to the matter before us, we conclude entry of the FRO was appropriate. Judge Levin's oral opinion shows he reviewed the witness's testimony in detail and made credibility findings. With respect to the critical question of whether C.J.A. had the intent to harass, Judge Levin stated:

> The [c]ourt here is going to find that by more than a preponderance of the evidence that [C.J.A.] had the purpose to harass on June 25th, 2022 when he . . . threatened to hurt the family and burn the house down, when you have those types of threats, the [c]ourt's finding . . . that's a purpose to harass. There's no other way to interpret those types of comments other than a purpose to harass. There's no other legitimate, legal, rational, reasonable way. The [c]ourt's going to find there's a purpose to harass.

We are unpersuaded by C.J.A.'s argument that the threat to burn the house down is insufficient to support a finding of harassment in light of our decision in <u>Peranio v. Peranio</u>, 280 N.J. Super. 47 (App. Div. 1995). C.J.A.'s reliance on

that case is misplaced. In <u>Peranio</u>, we held that in context, saying "I'll bury you" did not constitute a predicate act of harassment. <u>Id.</u> at 55. We emphasized there was no finding that the defendant intended to harass the plaintiff. <u>Ibid.</u> We noted that to the contrary, "[t]he trial judge appears to have found that defendant did not make the statement 'I'll bury you' for harassing purposes, but that it was nevertheless objectively alarming to plaintiff. This finding is insufficient as a matter of law to meet the statutory standard." <u>Ibid.</u> The present situation is starkly different. Here, Judge Levin found C.J.A. had the purpose to harass when he threatened to burn down the house with his family inside.

In sum, we have no basis upon which to second-guess Judge Levin's findings that C.J.A. committed the predicate act of harassment. Nor is there reason to disturb Judge Levin's finding that, considering the history of domestic violence, an FRO was needed to prevent future acts of domestic violence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3690-21