157 N.J. Super. 499 (1978)
385 A.2d 251
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEPARTMENT OF HEALTH, DEPARTMENT OF AGRICULTURE AND HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, PLAINTIFFS-APPELLANTS,
v.
LEON KOZIOL; TRANSCONTINENTAL TOWING AND REPAIRS, INC., A NEW JERSEY CORPORATION; METRO FEED AND SUPPLY CORP., A NEW YORK CORPORATION; AND BARTLO PACKAGING, INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1978.
Decided March 16, 1978.
*500 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Keith A. Onsdorff, Deputy Attorney General, argued the cause for appellant (Mr. John J. Degnan, Attorney General of New Jersey; Mr. William F. Hyland, former Attorney General of New Jersey; Ms. Erminie Conley of counsel).
*501 Mr. Gene N. Schiffman argued the cause for the respondent Bartlo Packaging, Inc. (Messrs. Schiffman and Schiffman, attorneys; Mr. Richard G. Berger on the brief).
The opinion of the court was delivered by BILDER, J.S.C. (temporarily assigned).
This is an appeal by the Department of Environmental Protection from the dismissal of claims for penalties for violations of the New Jersey Pesticide Control Law (N.J.S.A. 13:1F-1 et seq.).
In September 1976 plaintiff filed a complaint seeking injunctive relief and penalties under the act with respect to an alleged toxic mercury residue contamination in a building in Carlstadt owned by Leon Koziol. At a later date the complaint was amended to include a former tenant, the alleged operator-contaminator of the premises, defendant-respondent Bartlo Packaging, Inc. (Bartlo).
As the result of negotiations the issues with respect to the injunctive relief were resolved by a consent order of October 7, 1976 which in the main provided for the decontamination of the property and its protection during that process. In June 1977, the offending materials having been removed from the building and properly disposed of, the State's claims for penalties were, on motion of defendant Koziol, dismissed as to all parties. The State appeals from this dismissal insofar as it affects its claim for penalties as against Bartlo.
The trial judge based the dismissal on two grounds: (1) the existence of an implication in the consent order that the State would not press its penalty claim if defendants complied with the terms of the order  a quid pro quo, and (2) its own view that the decontamination of the property vindicated the public's interest.[1] We disagree and reverse.

*502 I
On examination, the record does not support a finding that the State agreed to drop its penalty claim. To the contrary, its right to assert that claim was expressly reserved in the recitals of the order of October 7, 1976.[2] Nor is such a waiver to be found in the State's colloquy on September 17, 1976 when the settlement was put on the record. In response to the State's request that its penalty claims should be heard at a later date, the court said:
All right. Of course, in the case of the penalty issue it is always colored by the extent of compliance and the cooperation of the parties with respect to curing the violations.
The State's acquiescence in that statement could do no more than accept a truism. The amount of the penalty is a matter of discretion. As a matter of common sense, the party's mitigating actions are bound to color the exercise of that discretion. This is a far cry from treating mitigation as expungement. It might further be noted that even if the colloquy created any ambiguity, it was certainly made clear when the agreement was memorialized by the subsequent order.

II
The thrust of the Pesticide Act is not purely remedial; it is preventive. It is replete with provisions to control the use of pesticides and to protect the environment. To view it principally as a vehicle for rectifying already dangerous conditions would be to ignore its beneficial purposes and narrow its remedial focus. Indeed, the creation of the *503 very penalties which underlie this controversy evidence legislative determination to deter violations. While the public has some interest in the decontamination of the Koziol property, its principal interest lies in a healthy environment  a condition more compatible with noncontamination in the first instance than decontamination. In this respect the penalty may be indispensable to the vindication of the public interest. Whether a penalty is appropriate in the instant case in order to vindicate the public interest  or if it is, its size  are matters to be determined on hearing. The extent of such penalties is discretionary with the trial court. Dept. of Health v. Concrete Specialties, Inc., 112 N.J. Super. 407, 411 (App. Div. 1970).
Reversed and remanded for further proceedings with respect to the penalty claim.
NOTES
[1] At the hearing on June 2, 1977 the judge said:

The most important aspect of this case was to see to it that the materials in question were removed from the building and were properly disposed of.
[2] The order of October 7, 1976, in its nonadmission of liability or responsibility and preservation of right clauses, recited, in part:

* * * is being made without prejudice solely to settle the matters in dispute concerning the plaintiffs' demands for injunctive relief, nor does it prejudice any parties' rights concerning plaintiffs' demands for penalties; * * *.